Bill by Phillip Bourquardez, as receiver of Six Mile Creek Kennel Club, against the Florida State Racing Commission and others, for declaratory decree as to his right to a license to operate a dog track. From an adverse decree, defendants appeal.
Affirmed.
The appellee filed a bill for declaratory decree, praying that the court determine his right, as receiver of Six Mile Creek Kennel Club, to a license to operate a dog track under a permit originally issued to the club in 1931, and, incidentally, to decide what personal responsibility he would undergo in the operation.
From the entire record in the case we find that after the operation of the dog track was ratified by the voters, racing was conducted on the property from December 7, 1932 for twelve days, and then discontinued. The following month a suit was instituted against the corporation, and it was in this litigation that the appellee was appointed receiver. Immediately afterward he was authorized to resume the racing, but evidently before he undertook to do so the permit was revoked, and in the litigation which followed, this order of revocation by the commission was quashed. Six Mile Creek Kennel Club v. State Racing Commission,119 Fla. 142, 161 So. 58. The only assets of the club remaining in his hands are the permit of 1931 and such interest as the club, as lessee, has in the lands upon which the track was located, *Page 88 
the lands being of no value, according to the allegation of the bill, without use of the permit. The receiver, because of doubt about his right to sell the permit, has sought the advice of the court.
These, in substance, are the allegations of the bill.
It appears from the testimony in the case that the enterprise is presently moribund. From the statement given by the appellee himself it seems that nothing whatever has been done toward holding racing meets on the land since 1935. At that time he sent a telegram to the Racing Commission to have dates for races assigned, and this application was not considered because he did not file "an application for license" and tender a bond. It appears further from his testimony that long ago the equipment was sold and the buildings razed, while another witness, introduced by the appellee, testified that there was no racing plant there now and no evidence that a race track was at one time located on the property except that one familiar with the premises at the time could see a trace of the outlines of the circular track.
There is more to the facts than we have related, but this seems sufficient to decide the point of law involved which the circuit judge thought determined the controversy — that is, whether Section 6 of Chapter 17276, Laws of 1935, providing "that all permits and licenses heretofore issued by said Commission to * * * corporations, prior to January 1st, 1935, which shall not conduct a racing meet within twelve months from the passage of this Act under and by virtue of said permits and licenses be and the same shall be cancelled and annulled" is self-executing. F.S.A. § 550.06. It was the opinion of the veteran chancellor in this case that when this section was read with the two sections immediately preceding it, it was clear that affirmative action by the Racing Commission was necessary to effectuate a forfeiture of the permit and that since no such action had been taken, the permit was still an asset in the hands of the receiver, who was therefore authorized to apply to the Racing Commission for their consent and approval to transfer it.
It is necessary now to give the two preceding sections to which the circuit judge referred. As a preface we should say that when an application for a permit to conduct races is issued it becomes effectual only when ratified by a majority of the voters participating in an election in the county where the racing is to take place. In Section 6 it is provided that the holder of a permit shall have the right to have submitted to the electorate the question whether racing under it shall be approved, and the manner of holding the election upon the application of the permittee is specified. Then there appear the provisos: first, that where the holder makes no such application to the Board of County Commissioners within six months, the permit shall become invalid and "the Commission is hereby authorized to cancel such permit without notice to the holder thereof"; second, that where the holder fails to construct a suitable track within twelve months after the ratification, the permit shall likewise be invalid and "the Commission is hereby authorized to cancel such permit without notice to the holder thereof"; third, the proviso already quoted, that permits issued prior to 1 January 1935 held by persons who have not conducted a racing meet within twelve months of the passage of the act shall be "cancelled and annulled."
Of course the difference is that in the first two provisos specific authority is granted the commission to cancel a permit declared "null and void," while in the last section there is no reference to authorization to cancel the permit nor a declaration that it shall be null and void, but simply that the permit shall be "cancelled and annulled."
The legislature is presumed to know the meaning of words and the rules of grammar, and the only way the court is advised of what the legislature intends is by giving the generally accepted construction, not only to the phraseology of an act but to the manner in which it is punctuated. *Page 89 
State ex rel. Hanbury v. Tunnicliffe, 98 Fla. 731, 124 So. 279.
The language employed was unfortunate, as is evidenced by the litigation that has grown from it, and we are unable to comprehend why there was a distinction between the phraseology used in the first two provisos and that used in the third.
Disregarding for the moment the express grant of authority in the first two provisos to cancel permits in certain instances, it is clear that the legislature in those provisos used adjectives to fix the status of those permits as invalid and worthless, while in the third the legislature simply commanded that a permit issued before a certain date and remaining dormant for twelve months after the passage of the act should be cancelled and annulled; and in the use of those transitive verbs it must have been contemplated that some affirmative action should be taken by the racing authority to render the permit useless.
We are at a loss to understand why, in the first two instances, the commission was granted authority to cancel a worthless and invalid permit, but at the worst it could be only surplusage. The verbs employed in the third proviso, when given their proper meaning, convey to us the idea that affirmative action was ordered taken upon the happening of a certain event.
The question is one of grammar more than of law, and we are impelled to the conclusion that the decree should be —
Affirmed.
ADAMS, C.J., and TERRELL, CHAPMAN and SEBRING, JJ., concur.
BARNS and HOBSON, JJ., dissent.