ON MOTION FOR REHEARING
ZEHMER, Judge.
The Department of Health and Rehabilitative Services’ (HRS) has filed an extensive motion for rehearing which raises serious questions concerning our construction of section 402.305(l)(a), Florida Statutes (1985). HRS concedes, for purposes of its motion, that the appealed order was deficient in failing to set forth the date, time, name of the accused individual and particulars of the alleged incident of abuse, and in failing to show that immediate harm to the public interest would occur absent emergency suspension of appellant’s license. § 120.60(8) and 120.54(9), Fla.Stat. (1985). HRS also admits it improperly failed to pursue alternatives less severe than emergency suspension of appellant’s license. The primary thrust of its motion is that we have misinterpreted the meaning of section 24, chapter 85-54, Laws of Florida, now codified in section 402.305, Florida Statutes (1985), by construing the statutory language as requiring judicial determination of a substantiated indicated report of abuse before the report can be used to presumptively disqualify a child care employee. Although the appealed order must stand vacated, we believe it is necessary to grant, in part, the motion for rehearing for the purpose of modifying and clarifying our discussion of the statute.
The pertinent portion of section 402.-305(l)(a) involved reads:
Such standards for screening shall also ensure that the person has not been judicially determined [1][1] to have committed abuse against a child as defined in s. 39.01(2) and (7), [2] to have a substantiated indicated report of abuse as defined in s. 415.503, or [3] to have committed an act which constitutes domestic violence as defined in s. 741.30. For misdemeanors prohibited under any of the foregoing Florida statutes or under similar statutes of other jurisdictions or for judicial determinations of abuse, substantiated' indicated reports of abuse, or commissions of domestic violence used for disqualification of a person from working with children, the department ... may grant an exemption from such a disqualification if the department ... has clear and convincing evidence to support a reasonable belief that the person is of good character as to justify an exemption. The per *851 son shall bear the burden of setting forth sufficient evidence of rehabilitation....
HRS contends preliminarily that we need not have construed the meaning of section 402.305(l)(a), Florida Statutes (1985), to resolve the issues presented on this appeal. For this reason, HRS contends, it could not have anticipated that we would reach the construction of the statute and, thus, it did not thoroughly brief the statutory construction issue.
We disagree with HRS that construction of the language in section 402.305(1) was unnecessary. The sole ground asserted by HRS in its summary order suspending appellant’s license was the fact that a member of the licensee’s family had a “substantiated indicated report of abuse” in the abuse registry. It was plainly necessary to determine what the statute actually means in order to decide whether HRS was authorized to disqualify appellant’s husband based on a “substantiated indicated report of abuse.” That inquiry necessarily led in turn to deciding whether the words “judicially determined” qualified the balance of the sentence in that section, including the quoted phrase. We have granted the motion for rehearing, therefore, to discuss the additional concerns expressed by HRS in its motion for rehearing so as to prevent any misinterpretation of our opinion regarding statutory intent and operation.
HRS contends the statute must be read so that the term “judicially determined” relates only to phrase [1] reading “to have committed abuse against a child as defined in s. 39.01(2) and (7).” It urges that “judicially determined” cannot also qualify phrase [2] “to have a substantiated indicated report of abuse” because such indicated report would be discovered through the abuse registry clearance of a person, as provided in section 402.302(10), Florida Statutes (1985), and no mechanism exists under the statute for judicial determination in this context. HRS argues that we should apply various standards of statutory construction, such as the rule that a relative or qualifying phrase is to be construed as referring to its nearest antecedent and that the use of the term “or” limits the modification of “judicially determined” to the immediately following phrase, citing Brown v. Brown, 432 So.2d 704, 710 (Fla. 3d DCA 1983). HRS concludes that our construction effectively eliminates its use of substantiated indicated reports of abuse as a basis for disqualifying persons from child care service, leaving the requirement in section 402.-302(10) for an abuse registry clearance of no practical effect. These contentions are based primarily on HRS’s assertion that “the only method for a substantiated indicated report of abuse to be judicially determined is through a criminal conviction.” HRS also states that section 415.51(4) “clearly indicates that both judicial determinations of abuse and substantiated indicated reports of abuse are sufficient to disqualify an individual from employment in a child care facility.” The bottom line for HRS, simply stated, is that our construction of section 402.305(l)(a) has effectively rendered meaningless any use of abuse registry clearance as a basis for disqualifying a person from employment in or holding a license to operate a child care facility.
Although our opinion dealt summarily with the statutory construction issue, for the reasons hereafter discussed, we do not believe that our construction of the statute has the adverse effects urged by HRS.
First, we find it unnecessary to resort to the rules of construction cited from Brown v. Brown, 432 So.2d 704. While it is elementary that our function is to ascertain and give effect to the legislative intent, “ ‘the Legislature is conclusively presumed to have a working knowledge of the English language and when a statute has been drafted in such manner as to clearly convey a specific meaning the only proper function of the Court is to effectuate this legislative intent.’ ” Florida State Racing Commission v. McLaughlin, 102. So.2d 574, 575 (Fla.1958). As stated in Florida State Racing Commission v. Bourquardez, 42 So.2d 87, 88:
*852 The legislature is presumed to know the meaning of words and the rules of grammar, and the only way the court is advised of what the legislature intends is by giving the generally accepted construction, not only to the phraseology of an act but to the manner in which it is punctuated.
See also, Allstate Mortgage Corporation of Florida v. Strasser, 277 So.2d 843 (Fla. 3d DCA 1973).
Unless the phrase “has not been judicially determined” is read as modifying each of the three phrases which commence with the words “to have” (numbered [1], [2] and [3] in the statute quoted supra, p. 2), the sentence becomes entirely meaningless from a purely grammatical standpoint. The words “such standards for screening shall also insure that the person has not been” must qualify the three phrases in order to establish the concept of a negative finding regarding abuse under chapter 39, reports of abuse under chapter 415, or domestic violence under chapter 741. It simply makes no sense to read that sentence as stating that “the person has not been ... to have a substantiated indicated report of abuse” or “that the person has not been ... to have committed an act which constitutes domestic violence,” which would be the case if “judicially determined” is not related to those phrases. Plainly the sentence makes sense only by construing the term “judicially determined” to modify the words “to have” in each of the three phrases.
We find patently specious the contention of HRS that only the first of the three phrases (abuse against a child as defined in section 39.01) is susceptible to judicial determination and that the remaining two phrases (reports of abuse as defined in section 415.503 and domestic violence as defined in section 741.30) are not susceptible to determination in judicial proceedings. Section 39.01(2) defines “abuse” to mean “any willful act that results in any physical, mental, or sexual injury that causes or is likely to cause the child’s physical, mental, or emotional health to be significantly impaired.” Section 39.01(7) defines “child,” in pertinent part, as meaning any unmarried person under the age of eighteen. Section 39.01(9) defines a “child who is found to be dependent” as one found by the court to have been abandoned, abused, or neglected by his parents or other custodians. Part III of chapter 39 provides for jurisdiction and procedures to determine dependency based upon child abuse. To this extent, HRS is correct that the act of committing child abuse under chapter 39 is readily susceptible to judicial determination.
The third phrase of the sentence under consideration refers to the commission of an act which constitutes domestic violence as defined in section 741.30. That section specifically provides that a spouse may institute an injunctive action for protection against domestic violence, and defines “domestic violence” as meaning “any assault, battery, or sexual battery by a person against the person’s spouse.” That section also recognizes that the judicial determination that a person’s conduct constitutes domestic violence may also take place in judicial proceedings filed under chapter 61, Florida Statutes, which deals with dissolution of marriage and child custody. Again, it is patently clear that an act of domestic violence is likely to be “judicially determined” in court proceedings under section 741.30 or under chapter 61. Since section 402.305(l)(a) specifies no other basis for determining that a person has committed an act constituting domestic violence, it is only reasonable to conclude that the legislature contemplated a judicial determination thereof.
Consequently, the term “judicially determined” must be read as relating to both the first and third phrases in the subject sentence of section 402.305(l)(a). That being so, we decline to read the sentence to mean that “judicially determined” does not likewise relate to the middle or second phrase of the sentence concerning a “substantiated indicated report of abuse.”
HRS is incorrect in its contention that the only way to judicially determine an indicated report of abuse is through a crim *853 inal conviction. Such determinations may also be the subject of civil court proceedings. Section 402.305(l)(a) refers to a “substantiated indicated report of abuse as defined in section 415.503.” Section 415.-503(3) defines “child abuse or neglect” as meaning “harm or threatened harm to a child’s physical or mental health or welfare by the acts or omissions of the parent or other person responsible for the child’s welfare.” Section 415.503(8) defines “indicated report” as meaning “a report made pursuant to s. 415.504 when a child protective investigation determines that some indication of abuse or neglect exists.” Section 415.504 requires that any person having knowledge or reasonable suspicion that a child is abused shall report this fact to the abuse registry maintained by HRS. Upon receipt of such report of abuse, a local office of HRS is required to investigate the report and, upon completion of its investigation, classify the report as “indicated” or “unfounded.” At this time, HRS is required to notify the parent or guardian of the child, the child (if appropriate), and the alleged perpetrator (if other than the child’s parent or guardian) that the investigation of the report has been completed and the report has been classified as “indicated” or “unfounded.” Subsection 415.-504(4)(d) provides that any person subject to an indicated report may request the Secretary of HRS to amend or expunge the case record on grounds that it is inaccurate or maintained in a manner inconsistent with sections 415.501 through 415.514. This subsection also gives a person the right to an administrative hearing to contest an adverse decision by the Secretary. Section 415.505 contains extensive detailed provisions governing child abuse investigations by HRS and authorizes the department to take a child into protective custody and petition the court as provided in chapter 39 where the circumstances indicate a need for immediate or long-term protection. It likewise provides that a full written report shall be made to the state attorney in cases of child abuse resulting in observable injury or medically diagnosed internal injury and shall recommend that the state attorney consider whether prosecution is justified. Section 415.506 makes specific provisions for taking a child into protective custody as provided in chapter 39. Section 415.508 provides for the appointment of a guardian ad litem “to represent the child in any child abuse or neglect judicial proceeding, whether civil or criminal.”
Nowhere in chapter 415 do we find a definition of “substantiated” as it relates to the “indicated report of abuse” defined by section 415.503(8). Since a report of abuse may rise to the level of “indicated” only after thorough investigation by HRS, use of the additional word “substantiated” to modify “indicated report of abuse” necessarily contemplates a further fact-finding endeavor in the nature of a judicial or quasi-judicial proceeding to establish the accuracy of the underlying facts revealed in the preliminary investigation leading to the “indicated report.” Obviously, court proceedings resulting in the criminal conviction of a person for child abuse would substantiate the indicated report. Likewise, civil court proceedings may substantiate an “indicated report” in the sense of judicially determining the existence of facts showing child abuse. For example, not only would dependency proceedings under chapter 39 substantiate such report, but custody hearings in divorce cases under chapter 61 often involve allegations of child abuse. It is even conceivable that a negligence action on behalf of the child for personal injuries resulting from child abuse may substantiate an “indicated report of. child abuse.” In all these situations, the facts underlying the indicated report of abuse are susceptible to factual substantiation by judicial determination. As we read the statutory language under consideration in context with other related statutes, it seems clear that the legislature has contemplated a judicial determination of the truthfulness of the facts underlying an indicated report of abuse in order for the report to be considered substantiated.
The elaborate provisions now contained in chapters 402 and 415 were, for the most part, not in existence when the abuse inci *854 dent in the case before us took place in 1979. Under the procedure existing at that time, HRS received a report of abuse, investigated that report, determined there to be some validity to the report, and filed the report of its investigation in its abuse files. Certainly that report qualifies as an “indicated report of abuse” within the meaning of sections 415.503 through 505. But no judicial proceedings, either civil or criminal, resulted from that indicated report, and the underlying facts have not been substantiated by judicial determination. That being so, the report does not meet the requirements of section 402.305(l)(a).
HRS is also in error when it contends that our construction of the statute prevents the effective use of the child abuse registry in the screening process. Certainly indicated reports of abuse filed in the HRS child abuse registry must be used in complying with the statutory mandate to screen all child care facility employees. Our decision defines only the legal effect that may be given reports in disqualifying an employee or family member from child care service. In our original opinion we pointed out that persons adjudicated guilty of the felonies described in section 402.-305(l)(a) are conclusively disqualified from such service by the statute. We likewise pointed out that persons guilty of certain misdemeanors and persons “judicially determined” to have committed certain acts of child abuse or domestic violence were presumptively disqualified from engaging in child care service until they carried the burden of convincing HRS to the contrary by presenting evidence to demonstrate rehabilitation and fitness. In instances during the screening process where an indicated report, which has not been substantiated by judicial determination, is found in the child abuse registry, HRS may nevertheless disqualify such person on the basis of that report by giving appropriate notice of rejection of the application for license or employment on that ground. Should the applicant or employee contest the accuracy of the indicated report and request an administrative hearing, as authorized by the statutes, HRS would bear the burden of proving the facts showing abuse which are the subject of the indicated report.
The statute as so construed comports with constitutional requirements of due process because it fully preserves the right of any potential licensee or employee of a child care facility to have the truthfulness of the allegations of child abuse substantiated at a hearing in which that individual may participate after reasonable notice. On the other hand, were we to approve the construction urged by HRS, any indicated report of abuse in its registry would disqualify an individual from employment until that individual carried the burden of disproving the accuracy of the reported abuse. To so shift the burden of proving the negative, i.e., that the alleged act of child abuse did not occur, is contrary to fundamental notions of fairness forming the basis of our system of justice, and we have considerable doubt that such procedure would satisfy the requirements of constitutional due process.
Turning to the ease at hand, the indicated report of abuse was not substantiated by judicial determination, as required by the applicable statute. The fact that appellant’s husband had been the subject of an indicated report of abuse which was on file in the HRS child abuse registry did not presumptively disqualify appellant from employment in the child care facility. That report of child abuse could, however, form the basis for disqualifying him after notice and hearing in which the incident of abuse were established. Moreover, had HRS obtained evidence of facts supporting the conclusion that the reported acts of abuse posed an immediate danger to the public interest and health, HRS could have proceeded on the basis of this information to obtain emergency relief under chapter 120 by showing in its emergency order the specific facts establishing the immediacy of the danger. Since HRS failed to show such immediate danger to public health in the instant case, its order must be vacated.
THOMPSON and BARFIELD, JJ., concur.

. The numbers in brackets have been added for ease of future reference to the three phrases we held are related to the term "judicially determined.”