Ms. Lee O'Brien Police Legal Advisor Orlando Police Department 100 South Hughey Avenue Orlando, Florida 32801
Dear Ms. O'Brien:
You have asked substantially the following questions:
1. May the Orlando Police Department enter into a mutual aid agreement with area municipalities to address potential Y2K-related matters?
2. May the governing body of a municipality approve the form for a mutual aid agreement and delegate the authority to enter into such an agreement to the municipality's chief administrative officer?
In sum:
1. The governing body of the City of Orlando may approve a mutual aid agreement as proposed to address potential problems related to Y2K complications.
2. The governing body of the City of Orlando may delegate to the chief administrative officer of the city the authority to enter into a mutual aid agreement on behalf of the city's law enforcement agency.
Question One
You state that the City of Orlando joins in your request for an opinion on this matter. A proposed mutual aid agreement would allow the City of Orlando to provide law enforcement assistance to law enforcement agencies in surrounding municipalities should they, among other things, encounter difficulties as a result of computer malfunction attendant with the Year 2000. The proposed agreement sets forth the procedure for requesting assistance, and the logistics of command and supervisory responsibility; recognizes the liability of the parties to the agreement, as well as the powers, privileges, immunities, and costs each possesses or incurs; and requires each party to provide satisfactory proof of liability insurance. In the event an agency seizes property under the Florida Contraband Forfeiture Act during the performance of the agreement, the requesting party would be responsible for initiating the forfeiture proceeding, but proceeds would be divided equally among the parties.
Part I, Chapter 23, Florida Statutes, the "Florida Mutual Aid Act," constitutes statutory authorization for police officers of a municipality to exercise their authority outside municipal boundaries by creating a state law enforcement mutual aid plan that provides for the coordination of law enforcement planning, operations, and mutual aid across jurisdictional lines.[1] To carry out this plan, the Legislature has found it necessary to "allow a law enforcement agency to enter into a mutual aid agreement with another law enforcement agency of this state or any other state or with any law enforcement agency of the United States or its territories."[2]
Section 23.127(1), Florida Statutes, expressly provides that law enforcement officers rendering aid outside their jurisdiction but within the state pursuant to a mutual aid agreement have the same powers as if they were performing such duties within their jurisdiction. Thus, municipal law enforcement officers may, through a mutual aid agreement, exercise their authority outside the jurisdictional boundaries of the city.
The term "mutual aid agreement" for purposes of the act refers to one of the following types of agreements:
"(a) A voluntary cooperation written agreement between two or more law enforcement agencies, or between one or more law enforcement agencies and either a school board that employs school safety officers or a state university that employs or appoints university police officers in accordance with s. 240.268, which agreementpermits voluntary cooperation and assistance of a routine lawenforcement nature across jurisdictional lines. The agreement must specify the nature of the law enforcement assistance to be rendered, the agency or entity that shall bear any liability arising from acts undertaken under the agreement, the procedures for requesting and for authorizing assistance, the agency or entity that has command and supervisory responsibility, a time limit for the agreement, the amount of any compensation or reimbursement to the assisting agency or entity, and any other terms and conditions necessary to give it effect. Examples of law enforcement activities that may be addressed in a voluntary cooperation written agreement include establishing a joint city-county task force on narcotics smuggling or authorizing school safety officers to enforce laws in an area within 1,000 feet of a school or school board property.
(b) A requested operational assistance written agreement between two or more law enforcement agencies, or between one or more law enforcement agencies and either a school board that employs school safety officers or a state university that employs or appoints university police officers in accordance with s. 240.268, which agreement is for the rendering of assistance in a law enforcement emergency. The agreement must specify the nature of the law enforcement assistance to be rendered, the agency or entity that shall bear any liability arising from acts undertaken under the agreement, the procedures for requesting and for authorizing assistance, the agency or entity that has command and supervisory responsibility, a time limit for the agreement, the amount of any compensation or reimbursement to the assisting agency or entity, and any other terms and conditions necessary to give it effect. An example of the use of a requested operational assistance written agreement is to meet a request for assistance due to a civil disturbance or other emergency as defined in s. 252.34.
(c) A combination of the agreements described in paragraphs (a) and (b). (e.s.)"[3]
This office has stated that the use of a mutual aid agreement does not contemplate a complete assumption of law enforcement services by an assisting law enforcement agency but is more limited in scope.[4] As recognized by the act itself, the use of mutual aid agreements should more appropriately be confined to specific law enforcement activities in which two or more law enforcement agencies jointly provide assistance to each other.
In Attorney General Opinion 97-45, this office considered a proposed mutual aid agreement that sought to establish cooperation and assistance of a primarily routine law enforcement nature across jurisdictional lines as provided in section 23.1225(1)(a), Florida Statutes.[5] The agreement authorized a municipal police officer in a subscriber's jurisdiction who observed a crime of violence or a felony to exercise authority as a sworn law enforcement officer. While the statute requires that the agreement specify "the procedures for requesting and for authorizing assistance," the proposed agreement itself constituted the request for, and authorization of, the type of assistance specified therein. Noting that such provisions are commonly used in mutual aid agreements, this office concluded that the mutual aid agreement was permissible under Part I, Chapter 23, Florida Statutes.
In this instance, the proposed mutual aid agreement specifies the nature of the law enforcement assistance to be rendered, assigns liability, defines the procedure for requesting assistance, designates the supervisory agency, limits the effective time, sets forth the manner of compensation and reimbursement, and addresses the division of contraband forfeiture funds. The proposed mutual aid agreement you have provided meets the requirements of Part I, Chapter 23, Florida Statutes, and may be used to meet law enforcement demands that may result from Y2K complications.
Question Two
Section 23.1225(3)(b), Florida Statutes, authorizes a "mayor or chief executive officer of a municipality or county on behalf of a law enforcement agency, if authorized by the governing body of the municipality or county," to enter into a mutual aid agreement.
In Attorney General Opinion 96-07, this office was asked whether a sheriff could enter into a mutual aid agreement without authorization of the county commission. Changes to section23.1225, Florida Statutes, in 1992 allowed a mutual aid agreement to be entered into "by a sheriff or by the mayor or chief executive officer of a municipality or county on behalf of a law enforcement agency, if authorized by the governing body of the municipality or county."[6] A review of the legislative history accompanying the statutory changes showed no intent to remove the authority of the sheriff to enter into mutual aid agreements or to require approval by the county's governing body. Rather, the changes were made to expand the list of officials who may enter into a mutual aid agreement to include the chief officer of a county in order to encompass charter counties that have abolished the office of sheriff.[7] Consideration of the grammatical construction of the statute led this office to conclude that the qualifying phrase "if authorized by the governing body of the municipality or county" referred only to the mayor and chief executive officer, not the sheriff.[8] This construction was supported by amendments to section 23.1225(3), Florida Statutes, in 1996, when the individuals authorized to enter into mutual aid agreements were segregated under separate subsections (a) through (c). The present language affecting mayors and chief executive officers appears under section 23.1225(3)(b), Florida Statutes.[9]
Thus, the plain language of the statute allows a governing body of a municipality to authorize the chief executive officer of the municipality to enter into a mutual aid agreement on behalf of the city's law enforcement agency. No further interpretation of the statute is needed.[10] You have advised this office that the chief administrative officer is the chief executive officer for the City of Orlando. Accordingly, it is my opinion that the governing body of the City of Orlando may approve the mutual aid agreement as proposed and may authorize the chief administrative officer of the city to enter into such an agreement with other law enforcement agencies.
Sincerely,
Robert A. Butterworth Attorney General
RAB/tls
[1] Section 23.121(1)(a), Fla. Stat.
[2] Section 23.121(1)(g), Fla. Stat. And see, s. 23.121(1), Fla. Stat., stating the need for the Florida Mutual Aid Act:
"Because of the existing and continuing possibility of the occurrence of natural or manmade disasters or emergencies and other major law enforcement problems, including those that cross jurisdictional lines, and in order to ensure that preparations of this state will be adequate to deal with such activity, protect the public peace and safety, and preserve the lives and property of the people of the state[.]"
[3] Section 23.1225(1), Fla. Stat. (1998 Supp.).
[4] Attorney General Opinion 96-78 (1996). And see, Op. Att'y Gen. Fla. 90-84 (1990).
[5] See, Op. Att'y Gen. Fla. 82-52 (1982) (law enforcement services provided pursuant to mutual aid agreement do not require "cross swearing" of officers); Op. Att'y Gen. Fla. 72-178 (1972).
[6] Section 23.1225(3), Fla. Stat. (1992 Supp.).
[7] See, Senate Staff Analysis and Economic Statement on CS/SB 1134, February 11, 1992.
[8] See generally, Florida State Racing Commission v.Bourquardez, 42 So.2d 87 (Fla. 1949) (Legislature is presumed to know the meaning of words and rules of grammar; court is advised of Legislature's intent by giving the generally accepted construction, not only to phraseology of act but to manner in which it is punctuated).
[9] See, s. 1, Ch. 96-276, Laws of Fla.
[10] See, Goddard v. State, 438 So.2d 110 (Fla. 1st DCA 1983) (where language of statute is plain, resort to rules of statutory construction is unnecessary to glean intent of Legislature).