Dear Superintendent James:
You ask substantially the following question:
Does section 1001.452, Florida Statutes, require the composition of the school advisory council to reflect the racial balance of the student population attending the school served by the advisory council?
This office has been advised that the Gadsden County School Board has joined in your request.
According to your letter, the auditor for the district submitted preliminary tentative audit findings to the school district on January 25, 2008. One such finding stated in part:
"[O]ur review of the membership composition of the school advisory councils established at other District schools disclosed that the ethnic and racial compositions at two schools were underrepresented by 15.29 percent and 26.69 percent, or an average of 8.5 members.
As provided by Section 24.121(5)(d), Florida Statutes, school advisory councils that do not meet the composition requirements may jeopardize the District's ability to receive State funding. . . ."[1]
You use as an example the St. John Elementary School. According to your letter, the school's advisory council is composed of 34 members:
"21 are of African American heritage (61.76%); 10 are of Hispanic heritage (29.41%); 2 are of non-Hispanic White heritage (5.88%); and 1 is "Other" (2.94%) (e.g., two or more races)"
You state that the auditor's finding contemplates that since 88.45% of the school's students are of African American heritage, 88.45% of the members of the school's advisory council should be of African American heritage. According to your letter, the Gadsden County School District serves "an economic community of 46,658 residents of which 56% are of African American heritage, 35.2% are of non-Hispanic White heritage, 8.2% are of Hispanic heritage, and 0.6 are Other[.]" You further state that the census tracts served by the St. John Elementary School "are very similar to those of the county-wide demographics."
Section 1001.452(1)(a), Florida Statutes, provides:
"The district school board shall establish an advisory council for each school in the district and shall develop procedures for the election and appointment of advisory council members. Each school advisory council shall include in its name the words "school advisory council." The school advisory council shall be the sole body responsible for final decisionmaking at the school relating to implementation of the provisions of ss. 1001.42(16) and 1008.345. A majority of the members of each school advisory council must be persons who are not employed by the school. Each advisory council shall be composed of the principal and an appropriately balanced number of teachers, education support employees, students, parents, and other business and community citizens who arerepresentative of the ethnic, racial, and economic community served bythe school." (e.s.)
Thus, the statute provides for the establishment of an advisory council for each school and prescribes the composition of such council which must be representative of "ethnic, racial, and economic community served by the school."
The ordinary rules of grammar and punctuation are to be used in determining construction of a statute.[2] As adjectives, the terms "ethnic, racial, and economic" all modify the noun "community."[3]
Thus, the statute requires that a school's advisory council be composed of individuals who reflect not only the ethnic but also the racial and economic community served by the school.
Words, when used in a statute, should be construed in their plain and ordinary sense.[4] The term "community" generally refers to people living in a particular place or region.[5] In light of the above, the reference to the "community served by the school" would appear to be narrower than the school district at large. Rather, the statute in requiring that the composition on the school advisory council reflect the ethnic, racial, and economic community served by the school would appear to refer to the ethnic, racial and economic community in the geographic area served by the school. Nor does the statute state that the composition on the council must reflect the actual student population attending the school served by the council and this office cannot read such a requirement into the law.
Accordingly, I am of the opinion that section 1001.452(1)(a), Florida Statutes, in requiring that the composition of the school advisory council reflect the "ethnic, racial, and economic community served by the school," refers to the ethnic, racial, and economic balance of the geographic area served by the school rather than the district at large or the actual student population attending the school served by the advisory council. Furthermore, I am of the opinion that while the composition of the advisory council must represent each ethnic, racial, and economic community, there need not be a precise percentage or ratio of each community category equal to the percentage of the general population served.
Sincerely,
 Bill McCollum Attorney General
BM/tjw
[1] Finding No. 13, Preliminary and Tentative Audit Findings. Andsee s. 1008.345(6)(c), Fla. Stat. ("[p]ursuant to s. 24.121(5)(d), the department shall not release funds from the Educational Enhancement Trust Fund to any district in which a school, including schools operating for the purpose of providing educational services to youth in Department of Juvenile Justice programs, . . . does not comply with school advisory council membership composition requirements pursuant to s. 1001.452"); and s. 24.121(5)(d), Fla. Stat., containing a similar prohibition.
[2] See, e.g., Florida State Racing Commission v. Bourquardez, 42 So. 2d 87 (Fla. 1949) (Legislature is presumed to know meaning of words and rules of grammar; court is advised of Legislature's intention by giving the generally accepted construction not only to phraseology of act, but to manner in which it is punctuated); S.R.G. Corporationv. Department of Revenue, 365 So. 2d 687
(Fla. 1978); State ex rel. Southern RollerDerbies v. Wood, 199 So. 262 (Fla. 1940) (legislative intent determined by language used considered in its ordinary and grammatical sense); Op. Att'y Gen. Fla. 93-26 (1993) (Legislature is presumed to know meaning of words and the rules of grammar; thus, legislative intent is first to be determined by the language used, considered in its ordinary grammatical sense).
[3] Hodges and Whitten, Harbrace College Handbook (1982), p. 530 ("adjective: A part of speech regularly used to modify (describe or limit) a noun or pronoun"); and see Webster's Third New International Dictionary Adjective p. 27 (unabridged ed. 1981).
[4] See, e.g., Sieniarecki v. State, 756 So. 2d 68 (Fla. 2000) (in absence of a statutory definition, words of common usage are construed in their plain and ordinary sense and, if necessary, the plain and ordinary meaning of the word can be ascertained by reference to a dictionary); Rollins v. Pizzarelli, 761 So. 2d 294 (Fla. 2000); In reMcCollam, 612 So. 2d 572 (Fla. 1993) (when language of statute is clear and unambiguous and conveys a clear meaning, statute must be given its plain and ordinary meaning); Frankenmuth Mutual Insurance Company v.Magaha, 769 So. 2d 1012 (Fla. 2000) (in ascertaining the plain and ordinary meaning of a term, a court may refer to a dictionary); Ops. Att'y Gen. Fla. 93-47 (1993) (in construing statute which is clear and unambiguous, the plain meaning of statute must first be considered) and 93-02 (1993) (since it is presumed that the Legislature knows the meaning of the words it uses and to convey its intent by the use of specific terms, courts must apply the plain meaning of those words if they are unambiguous).
[5] See Webster's Third New International DictionaryCommunity p. 460 (unabridged ed. 1981). And see Black's Law DictionaryCommunity p. 297 (2004 ed.) ("A neighborhood, vicinity, or locality.");Community Dictionary.com, Merriam-Webster's Dictionary of Law, Merriam-Webster, Inc., http://dictionary.reference.com/browse/community (accessed: February 19, 2008) ("the people who live in a particular place or region and usually are linked by some common interests").