# FIFTH DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

Case No. 5D2023-0963
LT Case No. 2020-CA-000761

_____

WILLIAM PECCHIA and
KATHLEEN PORTER,

     Appellants,

     v.

WAYSIDE ESTATES HOME
OWNERS ASSOCIATION, INC.,

     Appellee.

_____

On appeal from the Circuit Court for Seminole County.
Jessica J. Recksiedler, Judge.

Katherine Hurst Miller, Barbara C. Reid, and R. Brooks Casey, of Wright & Casey, P.A., New Smyrna Beach, for Appellants.

Kansas R. Gooden, of Boyd & Jenerette, P.A., Miami, and Kevin D. Franz, of Boyd & Jenerette, P.A., Boca Raton, for Appellee.

June 7, 2024

BOATWRIGHT, J.

     Appellants, William Pecchia ("Pecchia") and Kathleen Porter ("Porter"), appeal the lower court's final judgment denying their request for injunctive relief against Appellant, Wayside

Estates Homeowners Association, Inc. ("Wayside"), and awarding prevailing party attorney's fees to Wayside. In particular, Pecchia and Porter raise three primary arguments on appeal: 1) the court erred when it found Wayside had sufficiently complied with the requirements of section 720.303, Florida Statutes (2019), in response to Pecchia's and Porter's requests to inspect the association documents; 2) the court erred when it found Wayside had sufficiently complied with its obligations to maintain the common elements of the community and to enforce the Covenants, Conditions and Restrictions (the "CCRs") against violating homeowners, thus effectively "mooting" the need for an injunction; and 3) the court erred when it awarded attorney's fees to Wayside. We reverse the portion of the court's order finding that Wayside complied with its statutory recordkeeping and inspection requirements under section 720.303(4) and (5) and dismiss as premature the portion of the appeal challenging the award of prevailing party attorney's fees to Wayside. In all other aspects, we affirm the trial court's order without further discussion.

I.

Wayside is a small, ten-home, self-managed homeowners' association located in Seminole County. Pecchia and Porter both respectively own homes within Wayside. According to Wayside's recorded Declaration of Covenants, Conditions and Restrictions, all lot owners are members of the homeowners' association.

The litigation in this case arises from disputes between Pecchia and Porter and Wayside. As members of the association, Pecchia and Porter were concerned that Wayside was failing to adequately maintain the association's common elements, such as its fences and storm water pond, and that it also was not enforcing violations of the CCRs against homeowners. Over the years, it appeared to Pecchia and Porter that Wayside had lowered annual assessments and spent less money on maintenance in the community despite deteriorating property conditions. As a result, they requested the official association records from Wayside pursuant to section 720.303(5), including insurance policies for the prior two years, and records reflecting maintenance expenditures and upkeep of individual lots and common areas.

In November of 2019, through counsel, Pecchia and Porter submitted a formal records request via certified mail to Wayside pursuant to section 720.303(5), requesting that Wayside make the official association records which it was required to maintain in accordance with section 720.303(4) available for inspection within ten days. Wayside signed for the certified letter on November 4, 2019, which meant the deadline for inspection under section 720.303(5) was November 19, 2019. Pecchia and Porter did not receive a response by the statutory deadline, and their counsel again reached out to Wayside on November 22, 2019. Pecchia's and Porter's counsel then exchanged some emails with Wayside's secretary regarding the manner and date of the inspection. On December 13, 2019, Wayside responded by providing photocopies of some of the requested documents to Pecchia's and Porter's counsel; however, numerous requested documents required to be kept under section 720.303(4) were still missing. Pecchia and Porter submitted a renewed request for the documents on January 13, 2020.

The parties attempted to negotiate the issue over the documents for the next couple of months with no resolution. Ultimately, Pecchia and Porter filed a verified complaint for injunctive relief against Wayside. In the complaint, they alleged, inter alia, that Wayside had failed to maintain and/or produce the association records that they had requested in November of 2019. In particular, Pecchia and Porter alleged that they were entitled to missing financial statements, including canceled checks and bank statements showing Wayside's payments for repairs and maintenance on the association common property, as well as the insurance policies for 2017 and 2018, which had not been provided. Pecchia and Porter sought the issuance of a mandatory injunction requiring Wayside to produce the requested official records. They additionally sought statutory damages under section 720.303(5) and attorney's fees pursuant to section 720.305, Florida Statutes (2019).

This issue proceeded to a bench trial. At trial, the testimony showed that Wayside had not complied with the original document request within the ten-day time limit prescribed under section 720.303(5) and that the documents had not been properly maintained pursuant to section 720.303(4). Although the

3

testimony at trial showed that Wayside ultimately provided numerous documents after the expiration of the ten-day time limit, the testimony also showed that Wayside still had not provided or made available all requested documents as of the date of trial. In particular, and pertinent to this appeal, Wayside had not provided all financial statements, bank statements, and insurance policies, which had been specifically requested.

At the conclusion of the trial, the court denied Pecchia's and Porter's request for injunctive relief as to the requested records and documents. In doing so, the court found that Wayside had "provided sufficient documents in response to the plaintiffs' request" and that the issue was now moot. In making its decision, the court did not address the missing insurance policies, but it specifically ruled that Wayside was not statutorily required to provide the bank statements and canceled checks at issue, as section 720.303(4) requires only that the association maintain "accounting records." The court explained that the "accounting records" required to be kept under section 720.303(4) would include "detailed records of receipts and expenditures, financial statements, financial reports, . . . statements of accounts, and balances due," and it ruled that bank statements and cancelled checks are not included in the records required to be maintained. Thus, the court found that Wayside had sufficiently complied with the statutory requirements of sections 720.303(4) and (5) by providing portions of its financial statements and records, including some of its profit and loss statements, balance sheet statements, account statements, bank statements and other financial records even though many records and statements were missing including numerous bank statements. Finally, the court ruled that although the requested documents had not been provided within the ten-day statutory time limit, Wayside was not in violation of the deadline because "sufficient" documents were ultimately provided.

## II.

This appeal raises issues of statutory interpretation. When interpreting a statute, we "follow the 'supremacy-of-text principle'—namely, the principle that '[t]he words of a governing text are of paramount concern, and what they convey, in their

4

context, is what the text means.'" *Richman v. Calzaretta,* 338 So. 3d 1081, 1082 (Fla. 5th DCA 2022) (alteration in original) (quoting *Ham v. Portfolio Recovery Assocs.,* LLC, 308 So. 3d 942, 946 (Fla. 2020)). Importantly, we must "arrive at a 'fair reading' of the text by 'determining the application of [the] text to given facts on the basis of how a reasonable reader, fully competent in the language, would have understood the text at the time it was issued.'" *USAA Cas. Ins. Co. v. Mikrogiannakis,* 342 So. 3d 871, 873 (Fla. 5th DCA 2022) (alteration in original) (quoting *Lab'y Corp. of Am. v. Davis,* 339 So. 3d 318, 323–24 (Fla. 2022)). "[T]he plainness or ambiguity of [legal text] is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Conage v. United States,* 346 So. 3d 594, 598 (Fla. 2022) (citation omitted). Florida courts also are guided by Justice Joseph Story's view that "every word employed in [a legal text] is to be expounded in its plain, obvious, and common sense, unless the context furnishes some ground to control, qualify, or enlarge it." *Ham,* 308 So. 3d at 946–47 (quoting *Advisory Op. to Governor re Implementation of Amend. 4, the Voting Restoration Amend.,* 288 So. 3d 1070, 1078 (Fla. 2020)).

Thus, the goal of interpreting a legal text is to arrive at a "fair reading" of the text by "determining the application of [the] text to given facts on the basis of how a reasonable reader, fully competent in the language, would have understood the text at the time it was issued." *Id.* at 946 (quoting Antonin Scalia & Bryan Garner, *Reading Law: The Interpretation of Legal Texts* 33 (2012)). When the statute is clear on its face in its requirements, "our 'sole function' is to apply the law as we find it." *Alachua Cnty. v. Watson,* 333 So. 3d 162, 169 (Fla. 2022) (quoting *Niz-Chavez v. Garland,* 593 U.S. 155, 160 (2021)). Finally, courts are to presume the legislature "know[s] the meaning of words and the rules of grammar, and the only way the court is advised of what the legislature intends is by giving the generally accepted construction, not only to the phraseology of an act but to the manner in which it is punctuated." *Fla. State Racing Comm'n v. Bourquardez,* 42 So. 2d 87, 88 (Fla. 1949).

Section 720.303 requires homeowners' associations to maintain their official records and to provide them to homeowners upon request. Specifically, section 720.303(4) enumerates an

extensive list of records which constitute the official records of the association. Specific to this appeal, section 720.303(4)(j) provides in relevant part that associations "shall maintain":

> The financial and accounting records of the association, kept according to good accounting practices. All financial and accounting records must be maintained for a period of at least 7 years. The financial and accounting records must include:
>
> 1. Accurate, itemized, and detailed records of all receipts and expenditures.
>
> . . .
>
> 3. All tax returns, financial statements, and financial reports of the association.
>
> 4. Any other records that identify, measure, record, or communicate financial information.

§ 720.303(4)(j), Fla. Stat. (2019). In addition, associations are required to maintain "[a]ll of the association's insurance policies or a copy thereof, which policies must be retained for at least 7 years." § 720.303(4)(h), Fla. Stat. (2019). Finally, associations are required to maintain "[a]ll other written records of the association not specifically included in this subsection which are related to the operation of the association." § 720.303(4)(n), Fla. Stat. (2019).

Subsection 720.303(5) requires associations to make their official records available for inspection to all homeowners within the association, and provides the following framework for the inspection requirements imposed on the association:

> The official records shall be maintained within the state for at least 7 years and shall be made available to a parcel owner for inspection or photocopying within 45 miles of the community or within the county in which the association is located **within 10 business days after receipt by the board or its designee of a written request.** This subsection may be complied

6

with by having a copy of the official records available
for inspection or copying in the community or, at the
option of the association, by making the records
available to a parcel owner electronically via the
Internet or by allowing the records to be viewed in
electronic format on a computer screen and printed
upon request.

(Emphasis supplied). In addition to the obligation to make the
documents available, the statute imposes requirements regarding
the location and timing for providing the documents. *Id.*
Associations may either provide copies of the documents or allow
inspection of the documents within ten business days of receipt of
a records request. *Id.*

Pursuant to section 720.303(5)(a), if an association fails to
provide access to its records within ten business days after it
receives a written request submitted by certified mail, there is a
rebuttable presumption that the association "willfully failed to
comply" with the inspection requirements therein. If the
association denies a homeowner access to its official records, the
homeowner "is entitled to the actual damages or minimum
damages for the association's willful failure to comply with this
subsection." § 720.303(5)(b), Fla. Stat. (2019). The minimum
damages established by subsection 720.303(5)(b) are $50 per
calendar day for up to ten days, or a total of $500 in statutory
damages for the failure to timely provide access to association
documents. *Id.* The calculation of damages begins on the 11th
business day after receipt of the written request. *Id.*

A.

We hold that the trial court erred in its interpretation of
section 720.303 when it ruled that Wayside had sufficiently
complied with the requirements of sections 720.303(4) and (5). As
Pecchia and Porter argue, the repeated usage of the word "shall"
in sections 720.303(4) and (5) signifies that there is no statutory
flexibility in an association's obligations to maintain the records
provided under section 720.303(4) and to permit inspection in
conformity with section 720.303(5). In Florida, it has long been the
law that "shall" is mandatory. *See Boca Ctr. at Mil., Ltd. Liab. Co.*

7

*v. City of Boca Raton*, 312 So. 3d 920, 923–24 (Fla. 4th DCA 2021) (citing *Brooks v. Anastasia Mosquito Control Dist.*, 148 So. 2d 64, 66 (Fla. 1st DCA 1963) ("It must be assumed that the Legislature of this state must know the plain and ordinary meaning of words and that the [word] 'may' when given its ordinary meaning, denotes a permissive term rather than the mandatory connotation of the word 'shall.'")). Indeed, the Florida Supreme Court has held that the use of the word "shall" is mandatory in nature. *See Wheaton v. Wheaton*, 261 So. 3d 1236, 1243 (Fla. 2019) (determining that the term "shall" used in the Florida Rules of Civil Procedure gives a mandatory connotation rather than a permissive one); *see also Progressive Express Ins. Co. v. Ferris*, 312 So. 3d 112, 116 (Fla. 5th DCA 2020) (holding that when interpreting a statute, "[t]he word 'may' when given its ordinary meaning denotes a permissive term rather than the mandatory connotation of the word 'shall'"). Thus, the use of word "shall" in the statute means that an association is not afforded discretion in determining which documents to maintain for the inspection of its members or to provide to its members, nor is the ten-day period discretionary. These obligations are clearly mandatory under the statute.

The mandatory nature of homeowners' associations' duties to maintain and provide documents is further reinforced by the implementation of a monetary penalty for the failure to provide the documents starting on the eleventh business day after a written request. § 720.303(5)(a)–(b), Fla. Stat. (2019). Immediately following the subsection prescribing the time frame and manner in which associations must make records available, section 720.303 contains two separate subsections which: 1) create a rebuttable presumption that an association's failure to timely provide access to the records means its failure to comply with section 720.303(5) was willful; and 2) establish statutory damages for the association's failure to timely provide access to its records. § 720.303(5)(a)–(b), Fla. Stat (2019). Reading these provisions in concert reinforces that they are designed to make an association's obligation to promptly provide documents to homeowners mandatory and with some financial penalty. *See Alachua Cnty. v. Watson*, 333 So. 3d 162, 169–70 (Fla. 2022) (citing *K Mart Corp. v. Cartier, Inc.,* 486 U.S. 281, 291 (1988) (requiring a court interpreting a statute to look at statutory language as well as the

8

language and design of a statute as a whole)). Finally, at least one appellate court has held that substantial compliance under chapter 720 is not authorized where the provisions in chapter 720 provide for mandatory compliance. *See Dwork v. Exec. Est. of Boynton Beach Homeowners Ass'n, Inc.*, 219 So. 3d 858 (Fla. 4th DCA 2017) (holding that where a homeowners' association gave thirteen days' notice rather than the required fourteen-day notice under section 720.305(b), substantial compliance was not authorized because the statute provided for a strict fourteen-day notice).

It was undisputed at trial that Wayside failed to provide for inspection of the requested records based on the November 1, 2019 request within the ten-day statutory deadline. This was evidenced by the fact that Wayside's recordkeeper testified she did not comply with the document request within ten days and stated that she was unaware that there was a ten-day deadline, despite acknowledging that Pecchia's and Porter's initial request pointed out this statutory mandate. Although Wayside finally provided some (but not all ) of the requested documents, even as of the date of trial, Wayside still had not complied with the document production requirements set forth in section 720.303(5). As a result, Wayside did not comply with its obligations to maintain and permit inspection of the documents within the proper statutory time limits.

Sections 720.303(4) and (5) do not provide for substantial compliance. Rather, the language of the statute clearly provides that a homeowners' association "shall" 1) maintain all items enumerated in 720.303(4) and 2) make them available to the homeowners within ten business days upon request. This language is mandatory in nature. As this was not done, at a minimum, the trial court should have found that Wayside willfully violated these timing requirements and imposed the statutory penalty.[1] Thus, the trial court erred in this regard.

---

[1] We acknowledge Wayside's argument on appeal that it did not "willfully" fail to comply with the provisions of section 720.303(5), and thus, pursuant to section 720.303(5)(b), the trial court was correct not to assess the statutory damages provided by this subsection. However, the issue of whether Wayside's failure to

B.

Pecchia and Porter next argue that the trial court erred in denying their request for injunctive relief as moot, as Wayside never made available the insurance policies requested under section 720.303(5), which were required to be kept per section 720.303(4)(h). The evidence at trial showed that although Wayside had insurance, it failed to make available its insurance policies for the years of 2017 and 2018 as requested. The trial court did not appear to consider the missing insurance policies, nor did the court mention them in its oral or written rulings.

Section 720.303(4)(h) expressly provides that the association "shall maintain" as its official records "all of the association's insurance policies or a copy thereof, which policies must be retained for at least 7 years." As such, under section 720.303(5), they should have been made available or provided to Pecchia and Porter. Since these policies were not provided or made available, the trial court erred and this matter was not moot. Thus, the trial court should have entered an injunction requiring Wayside to provide the requested insurance policies.

C.

Finally, Pecchia and Porter argue on appeal that they were entitled under sections 720.303(4) and 720.303(5) to any canceled checks and bank statements showing Wayside's payments for repairs and maintenance on the association common property. Pecchia and Porter requested these records so that they could review the sufficiency of the association's expenditures specifically regarding the association fences and the storm water pond. The court ruled that Wayside was not specifically required to provide

comply was "willful" was not specifically raised below and was not addressed by the trial court in its order. Further, the failure to provide access to the records within the ten-day period created a rebuttable presumption that Wayside willfully failed to comply with 720.303(5). The record does not establish that Wayside rebutted the presumption. Therefore, Pecchia and Porter would be entitled to the damages provided by section 720.303(5)(b).

10

its canceled checks and bank statements because those documents were not required to be kept as part of the accounting records per section 720.303(4). Thus, the court ruled that Wayside had sufficiently complied with Pecchia's and Porter's requests by providing them with a portion of its profit and loss statements, balance sheet statements, and statements of accounts—though, as indicated supra, it is clear that Wayside did not even provide access to all of its accountings for the prior seven years.

It is apparent from the trial testimony and record evidence that Wayside did not provide or make available its comprehensive bank statements to Pecchia and Porter. However, Wayside did provide numerous canceled checks, some of which appeared to be for expenses related to the common grounds. Pecchia and Porter did not provide sufficient evidence or testimony to demonstrate the existence of any other canceled checks that were not provided. Thus, we only address the issue of the missing bank statements.

As stated previously, sections 720.303(4) and 720.303(5) provide for strict compliance, not substantial compliance. Substantial compliance is not applicable under chapter 720 where the statutory language contains mandatory requirements. *See Dwork*, 219 So. 3d at 858. Section 720.303(4)(j) requires the association to maintain "financial and accounting records." As stated previously, the financial and accounting records **must** include:

> 1. Accurate, itemized, and detailed records of all receipts and expenditures.
>
> . . .
> 3. All tax returns, financial statements, and financial reports of the association.
>
> 4. Any other records that identify, measure, record, or communicate financial information.

§ 720.303(4)(j)1., 3., & 4., Fla. Stat. (2019). Under this section, bank statements would be included in the financial and accounting records which a homeowners' association is required to maintain. Bank statements could be included in the definition of "[a]ccurate,

11

itemized, and detailed records of all receipts and expenditures" under section 720.303(4)(j)1. Specifically, though, under 720.303(4)(j)3., bank statements fall within the ambit of "financial statement[s]," and per 720.303(4)(j)4., they clearly constitute "records that identify, measure, record, or communicate financial information." Thus, the financial and accounting records required to be kept under section 720.303(4) must include the association's bank statements. Because section 720.303(5) provides for the homeowner's right to inspect all records required to be maintained under section 720.303(4), Pecchia and Porter were entitled to request and inspect Wayside's bank statements. As such, the trial court erred and should have ordered Wayside to provide the missing bank statements.

## III.

The trial court granted Wayside's motion as to the entitlement of fees and costs and retained jurisdiction to determine the amount of the fees and costs. This Court has held that "an award of attorneys' fees does not become final, and, therefore, appealable until the amount is set by the trial court." *Mills v. Martinez,* 909 So. 2d 340, 342 (Fla. 5th DCA 2005). Therefore, the trial court's order is non-final and non-appealable as it relates to the granting of Wayside's motion for fees. *See Autoquotes (Fla.), Inc. v. Albright*, 383 So. 3d 533 (Fla. 5th DCA 2023) (holding trial court's order granting entitlement as to fees and costs but retaining jurisdiction as to the amount to be "non-final and non-appealable as it relates to the granting of [the motion for fees]" (citations omitted)); *see also Lasco Enters., Inc. v. Kohlbrand*, 819 So. 2d 821, 827 (Fla. 5th DCA 2002) ("An order which grants a party's motion for costs but reserves jurisdiction to determine the amount of costs is a non-final, non-appealable order which this court lacks jurisdiction to review."). Thus, to the extent that the instant appeal challenges the trial court's adjudication of Wayside's entitlement to attorney's fees, we dismiss this portion of the appeal for lack of jurisdiction.

## IV.

We reverse the portion of the trial court's final judgment finding Wayside sufficiently complied with its statutory

12

recordkeeping and inspection requirements under section 720.303, and therefore, we reverse and remand for further proceedings consistent with this opinion. In addition, we dismiss as premature the portion of the appeal challenging the trial court's award of prevailing party attorney's fees to Wayside. In all other aspects, we affirm the trial court's final judgment without further discussion.

AFFIRMED in part, REVERSED in part, DISMISSED in part, and REMANDED for further proceedings.

JAY and HARRIS, JJ., concur.

––––––––––––––––––––––––––

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

––––––––––––––––––––––––––