943 So.2d 823 (2006)
FLORIDA FARM BUREAU CASUALTY INSURANCE CO., Appellant,
v.
Eugene A. COX and Debra Cox, Appellees.
No. 1D05-4111.
District Court of Appeal of Florida, First District.
October 26, 2006.
Order Granting Certification December 15, 2006.
Rehearing Denied December 15, 2006.
*826 Mark J. Upton, Esquire of Daniell, Upton, Perry & Morris, P.C., Daphne, AL, for Appellant.
Gregory M. Shoemaker, Esquire of Schofield, Wade, Roane & Shoemaker, P.A., Pensacola and Louis K. Rosenbloum, Esquire of Louis K. Rosenbloum, P.A., Pensacola, for Appellees.
Charles F. Beall, Jr., Esquire of Moore, Hill & Westmoreland, P.A., Pensacola, for Amicus Curiae Helping Hands Legal Center.
BENTON, J.
Called upon to construe the 2004 version of Florida's Valued Policy Law (VPL or Law), the version in existence when Eugene A. and Debra Cox contracted with Florida Farm Bureau Casualty Insurance Company (Farm Bureau) for homeowners' insurance, we give the statutory language literal effect, and affirm the judgment entered in favor of the Coxes on the pleadings below. We hold the VPL forecloses an insurer's challenge to the measure of damages in the event of a total loss. See, e.g., Hartford Fire Ins. Co. v. Redding, 47 Fla. 228, 37 So. 62, 65 (1904).
On October 16, 2004, Hurricane Ivan left the Coxes' home in Santa Rosa County, which the policy valued at $65,000.00, a total loss. Wind and water both contributed. Farm Bureau alleged in its complaint for declaratory judgment that the loss was caused primarily by flooding. The Coxes counterclaimed for policy limits. The VPL provides that, when there is a total loss of a structure which is insured "as to a covered peril, . . . the insurer's liability, if any," is in the amount for which the property was insured. § 627.702(1), Fla. Stat. (2004).

I.
At the outset, we note that the current Valued Policy Law differs dramatically from the earlier version that controls here, and that the Legislature explicitly provided that the amended Law would not apply retroactively.[1] If the power the Florida Constitution assigns to the Legislature were ours instead, considerations like ease of actuarial analysis, the economics of the insurance industry, and even our own notions of fairness might well lead us to an interpretation of the 2004 statute not unlike what the statute has required since it was significantly revised in 2005. But reaching such a result in the face of the *827 previous (and controlling) statutory language would violate our state's organic law, which commands us to refrain from exercising the powers of another branch of government. Art. II, 3, Fla. Const.
Judicial restraint requires us to defer to the Legislature's broad power to enact substantive law in conformity with the state and federal constitutions, even if we are persuaded that a particular law may have negative consequences. In construing statutes, we must hew as closely as possible to the statutory language. As Justice Scalia has written, we are bound by the "objective indication of the words, rather than the intent of the legislature," understood in some amorphous sense discoverable apart from the words themselves. See Antonin Scalia, A Matter of Interpretation 29 (Amy Gutmann, ed. 1997). Therefore, we hold that the insurer here is liable for the total loss under the 2004 Valued Policy Law. In so holding, we express no opinion regarding the merits either of the 2004 or of the 2005 version of the statute, matters which are properly for the Legislature, not the courts, in the absence of any constitutional challenge.

II.
Neither version of the VPL applies unless insured property is a total loss. In this narrow class of cases, however, plain language in the 2004 version of the statute makes the insurer liable, if at all, then in the full amount for which the property was insured. "The legislature is presumed to know the meaning of words. . . ." Anderson v. Dep't of Health & Rehab. Servs., 485 So.2d 849, 851-52 (Fla. 1st DCA 1986) (quoting Fla. State Racing Comm'n v. Bourquardez, 42 So.2d 87, 88 (Fla.1949)). The operative language in the VPL is this:
In the event of the total loss of any . . . structure . . . insured by any insurer as to a covered peril, . . . the insurer's liability, if any, under the policy for such total loss shall be in the amount of money for which such property was so insured as specified in the policy and for which a premium has been charged and paid.
§ 627.702(1), Fla. Stat. (2004) (emphasis supplied). (The statute does not address any question concerning insurers' subrogation rights.) Nothing in the VPL reduces the insurer's liability to the insured when multiple perils contribute to the total loss of insured property. The VPL continues to operate as a liquidated damages provision. See Underwriters Ins. Co. v. Kirkland, 490 So.2d 149, 153 (Fla. 1st DCA 1986) (stating the VPL "valu[es] the loss in the nature of liquidated damages").
This is what the trial court ruled in the present case, relying on the Fourth District's decision in Mierzwa v. Florida Windstorm Underwriting Association, 877 So.2d 774 (Fla. 4th DCA 2004), where the Fourth District characterized the VPL as "simple and straightforward":
The meaning of the VPL is simple and straightforward. There are two essentials in the statute. The first is that the building be "insured by [an] insurer as to a [e.s.] covered peril." § 627.702(1). The second is that the building be a total loss. If these two facts are true, the VPL mandates that the carrier is liable to the owner for the face amount of the policy, no matter what other facts are involved as to the cost of repairs or replacement. That is to say, if the insurance carrier has any liability at all to the owner for a building damaged by a covered peril and deemed a total loss, that liability is for the face amount of the policy.
Id. at 775-76. The Mierzwa court pointed out that the Legislature used the indefinite article "a" before "covered peril" rather *828 than "the," and concluded that the use of "a" contemplates multiple perils. Id. at 776. Nothing in the statutory language limits the VPL's application to cases in which a solitary covered peril is the sole cause of the loss. The Law calls for more than partial payment in the event of total loss.
If an insurer has any obligation under the policy to pay on account of a covered peril, and the structure is a total loss, then the insurer is responsible for paying the total amount of the policy. The statute provides that the insurer's "liability" "if any" is in the amount for which the property is insured. § 627.702(1), Fla. Stat. (2004). "Liability" means "legal responsibility to another" or the "state of being legally obligated or accountable." Black's Law Dictionary 925 (7th ed.1999). "Liable" is defined as "legally obligated." Id. at 927. "If any" in the VPL means "if there is any obligation to indemnify for loss attributable to the covered peril." Subsection one stands in contrast to subsection two, which provides that the "insurer's liability, if any" in "the case of a partial loss" "shall be for the actual amount of such loss but shall not exceed the amount of insurance specified in the policy as to such property and such peril." § 627.702(2), Fla. Stat. (2004). The insurer's responsibility to pay the full amount of the policy is triggered when a total loss occurs and the insurer has "any" liability for a covered peril.
At issue in the present case is nothing more or less than whether courts should give this unambiguous statutory directive effect. We recently said:
"`[T]his court is without power to construe an unambiguous statute in a way which would extend, modify, or limit its express terms or its reasonable and obvious implications. To do so would be an abrogation of legislative power.' Am. Bankers Life Assurance Co. of Fla. v. Williams, 212 So.2d 777, 778 (Fla. 1st DCA 1968)." Beshore v. Dep't of Fin. Servs., [928 So.2d 411, 413 (Fla. 1st DCA 2006)]. "`It is a settled rule of statutory construction that unambiguous language is not subject to judicial construction, however wise it may seem to alter the plain language. . . . We trust that if the legislature did not intend the result mandated by the statute's plain language, the legislature itself will amend the statute at the next opportunity.'" [Fla. Dep't of Child. & Fam. Servs. v. McKim, 869 So.2d at 760, 762 (Fla. 1st DCA 2004)] (quoting State v. Jett, 626 So.2d 691, 692 (Fla.1993)).
Atlantis at Perdido Ass'n, Inc. v. Warner, 932 So.2d 1206, 1212-13 (Fla. 1st DCA 2006). We reaffirm our recently restated commitment to these fundamental principles, and acknowledge that our limited role in the constitutional scheme leaves statutory amendment to the Legislature.
When the statute is clear and unambiguous, courts will not look behind the statute's plain language for legislative intent or resort to rules of statutory construction to ascertain intent. In such instance, the statute's plain and ordinary meaning must control, unless this leads to an unreasonable result or a result clearly contrary to legislative intent. When the statutory language is clear, "courts have no occasion to resort to rules of construction  they must read the statute as written, for to do otherwise would constitute an abrogation of legislative power." Nicoll v. Baker, 668 So.2d 989, 990-91 (Fla.1996).
Koile v. State, 934 So.2d 1226, 1230-31 (Fla.2006) (quoting Daniels v. Fla. Dep't of Health, 898 So.2d 61, 64-65 (Fla.2005)) (internal citations omitted). To fail to "read the statute as written," the majority *829 would unconstitutionally appropriate "legislative power" to this court. Id.

III.
When the Legislature amended the VPL in the wake of the Mierzwa decision, it produced a very different statute, deleting the words "if any" and adding new language:
In the event of the total loss of any . . . structure . . . insured by any insurer as to a covered peril, . . . the insurer's liability under the policy for such total loss, if caused by a covered peril, shall be in the amount of money for which such property was so insured as specified in the policy and for which a premium has been charged and paid.
§ 627.702(1)(a), Fla. Stat. (2005) (emphasis added). Other language was added,[2] including notably the following:
It is the intent of the Legislature that the amendment to this section shall not be applied retroactively and shall apply only to claims filed after the effective date of such amendment.
§ 627.702(1)(c), Fla. Stat. (2005) (emphasis added). Our duty is to give clear statutory language its natural effect. We are not at liberty to transmogrify the earlier version of the statute into its inapposite successor, by reading the controlling version of the statute as if it were the later-enacted replacement now on the books.
The VPL amendment cannot be read as clarification of the legislative intent animating its predecessor, since the amendment states unambiguously that the amended statute is not to be applied retroactively to claims filed before enactment of the amendment. § 627.702(1)(c), Fla. Stat. (2005). The prior Law had been in effect in essentially the same form (applicable to any covered peril) since 1983. See Ch. 82-243, 539, at 1551, Laws of Fla. (amending the statute by deleting "fire or lightning," so that the statute applied to losses attributable to any covered peril, and changing "insured by any insurer as to such perils [fire or lightning]" to "insured by any insurer as to a covered peril").[3]
Even in the absence of an express prohibition against retroactive application, the Legislature is presumed to intend a change in the law when it makes substantive *830 changes in the language of a statute. See Mangold v. Rainforest Golf Sports Ctr., 675 So.2d 639, 642 (Fla. 1st DCA 1996) ("When the Legislature makes a substantial and material change in the language of a statute, it is presumed to have intended some specific objective or alteration of law, unless a contrary indication is clear."); United States Fire Ins. Co. v. Roberts, 541 So.2d 1297, 1299 (Fla. 1st DCA 1989) ("When a statute is amended, . . . one may assume, unless a contrary indication appears, that the legislature intended the amended statute to have a meaning different from that accorded to it before the amendment.").
The statute's specific antiretroactivity provision renders altogether irrelevant the general rule to the effect that, when the language of a statute is changed immediately after a controversy over the interpretation of the statute, the change may be construed as clarifying the intent of the original language.[4]See Lowry v. Parole & Prob. Comm'n, 473 So.2d 1248, 1250 (Fla.1985) ("When . . . an amendment to a statute is enacted soon after controversies as to the interpretation of the original act arise, a court may consider that amendment as a legislative interpretation of the original law and not as a substantive change thereof."). But see Kaisner v. Kolb, 543 So.2d 732, 738 (Fla.1989) ("Subsequent legislatures, in the guise of `clarification,' cannot nullify retroactively what a prior legislature clearly intended.").
The Legislature was, of course, aware of the Mierzwa decision when it amended the VPL. See Crescent Miami Ctr., LLC v. Fla. Dep't of Rev., 903 So.2d 913, 918 (Fla.2005) ("Florida's well-settled rule of statutory construction [is] that the legislature is presumed to know the existing law when a statute is enacted, including judicial decisions on the subject concerning which it subsequently enacts a statute.") (internal quotation marks and citations omitted). But, when several years intervene between the original enactment *831 of a statute and some purportedly clarifying amendment, the courts decline to interpret the amendatory language as clarifying the original intent of the Legislature, in any event. See, e.g., McKenzie Check Advance of Fla., LLC v. Betts, 928 So.2d 1204, 1210 (Fla.2006).
Sometimes it may be appropriate to consider a subsequent amendment [as intended] to clarify original legislative intent of a statute if such amendment was enacted soon after a controversy regarding the statute's interpretation arose. . . . In this case, . . . we conclude that seven years [between the original enactment and the amendment] is too long to view the amendment as merely a clarification of legislative intent.
Id. Before its amendment in 2005, the statute had been in substantially the same form for the preceding twenty-two years or more. An amendment nearly a quarter of a century after a statute is enacted cannot, under the cases, be considered "clarification" of the original enactment. See Betts, 928 So.2d at 1210. The Legislature amended the VPL to effect a (prospective) change in the law. See State Farm Mut. Auto. Ins. Co. v. LaForet, 658 So.2d 55, 62 (Fla.1995) ("It would be absurd . . . to consider legislation enacted more than ten years after the original act as a clarification of original intent.").

IV.
The purpose of a valued policy law is to fix the measure of damages when there is a total loss. See Springfield Fire & Marine Ins. Co. v. Boswell, 167 So.2d 780, 783 (Fla. 1st DCA 1964); see also Hartford Fire Ins. Co. v. Redding, 47 Fla. 228, 37 So. 62, 65 (1904) ("[The statute's] principal object and purpose is to fix the measure of damages in case of [total] loss . . . and, to this end, it requires the insurer to ascertain the insurable value at the time of writing the policy, and to write it therein."). In Springfield, this court observed:
Undoubtedly an important object of the statute is also to simplify and facilitate prompt settlement of insurance claims when a total loss occurs. It serves to remove what would otherwise be a very troublesome and difficult issue to resolve either between the parties by negotiation or by the courts in litigation. This issue is the money loss sustained which the insurer must indemnify. The value specific property had is hard to ascertain after its destruction because the usual evidence relied upon for such assessment is unavailable. The difficulties and uncertainties thus created were productive of suspicions of and opportunities for false or exaggerated claims on the one hand and for accusations, minimizations and oppressions on the other. Thus vexatious contests on this issue would persist when the best interests of all demanded prompt settlement and relief from the loss. A solution to this is found in the statute which in effect requires the parties to ascertain and agree in advance what the value is and in the case of total loss by the insured peril this amount shall be paid as liquidated damages.
Springfield, 167 So.2d at 784. The insurance company and the insured must agree on a figure when the policy is written, prior to any catastrophe. As the Springfield court explained, it is easier to decide the amount in which a total loss should be indemnified while the structure is still standing and available for inspection. Because the parties have to agree on the amount in advance, the insurance company is less likely to be able to collect inflated premiums, and the insured is less likely to be in a position to make an inflated claim, *832 in the event of a total loss of the property.[5]
An important purpose of the VPL is to reduce administrative costs. Insurance companies need not incur expenses for experts to pick through rubble to ascertain, for example, whether hurricane damage was done by wind-driven surface water spray, on one hand, or rainfall in a windstorm, on the other; nor, when experts disagree on such questions, does the VPL require the parties to bear the additional expense of litigation. Under the approach the dissenting opinion advocates, valuation questions would have to be resolved in conjunction with  as part and parcel of  questions of "relative causation." Farm Bureau has conceded in the present case, moreover, that it is liable for the full $65,000 if the Coxes can show that their home would have been destroyed by wind, even if Farm Bureau can prove its allegation that water was the primary cause of the loss in fact.

V.
No insurance policy can effect the repeal of a statute. It is the other way around: insurance policies are deemed to incorporate applicable statutes, and conflicting policy provisions must give way. See Citizens' Ins. Co. v. Barnes, 98 Fla. 933, 124 So. 722, 723 (1929) (holding that a municipal ordinance was "part of the contract of insurance, and that the insurer [wa]s bound thereby," and explaining the holding was "in line with the general doctrine that, where parties contract upon a subject which is surrounded by statutory limitations and requirements, they are presumed to have entered into their engagements with reference to such statute, and the same enters into and becomes a part of the contract"); U.S. Fire Ins. Co. v. Van Iderstyne, 347 So.2d 672, 673 (Fla. 4th DCA 1977) (holding that, where an insurance policy fails to conform to an applicable statute, the court must write a provision into the policy to comply with the law).
Recently in Allstate Ins. Co. v. Kaklamanos, 843 So.2d 885, 896 (Fla.2003), our supreme court relied on the statute codifying this requirement, and quoted it, as follows:
Any insurance policy, rider, or endorsement otherwise valid which contains any condition or provision not in compliance with the requirements of this code shall not be thereby rendered invalid, . . . but shall be construed and applied in accordance with such conditions and provisions as would have applied had such policy, rider, or endorsement been in full compliance with this code.
Id. (quoting § 627.418(1), Fla. Stat. (2001)). See also Young v. Progressive Se. Ins. Co., 753 So.2d 80, 83 (Fla.2000) (holding void provisions in uninsured motorist policies *833 which provide less coverage than required by applicable statute).
With specific reference to the VPL, the Florida Supreme Court has held that "any provisions of the policy under consideration in conflict with the [valued policy law] statute are devitalized by it." Martin v. Sun Ins. Office of London, 83 Fla. 325, 91 So. 363, 365 (1922); see also State Farm Mut. Auto. Ins. Co. v. Swearingen, 590 So.2d 506, 507 (Fla. 4th DCA 1991) (finding invalid a policy's three-year limitation on "med pay" coverage because it conflicted with applicable statute); Allison v. Imperial Cas. & Indem. Co., 222 So.2d 254, 256-58 (Fla. 4th DCA 1969). The VPL controls even when it conflicts with provisions of the insurance policy.[6]

VI.
The VPL was applied as early as 1935, over an insurer's objection that more than one cause  including perils it had not insured against  contributed to the total loss of a structure. See Am. Ins. Co. of Newark, N.J. v. Robinson, 120 Fla. 674, 163 So. 17, 19-21 (1935). Until the 2005 amendment, the VPL operated in multi-peril and single-peril cases alike, and was repeatedly applied to defeat various policy exclusions.
In Robinson, where fire left an insured structure a total loss, the insurance company argued that dry rot or termites (perils that the policy excluded from coverage) had caused much of the damage, and that this damage reduced the value of the property. The Florida Supreme Court squarely rejected the argument, explaining:

[V]alued policy statutes, such as ours, will not permit a reduction of the amount of insurance specified in the policy by reason of depreciation in value caused by use, decay, accident, casualty, or otherwise, where such change arises from a supervening cause occurring subsequent to the issuance of the policy, and the allowance of such reduction will not amount to a change of the value fixed by the parties pursuant to the statute at the time the contract of insurance was issued. . . . So the demurrer to each of said pleas was properly sustained in a case where it appeared that the entire building had been lost and there was no supervening cause alleged to take anything of value away from it and save it from the fire so as to entitle the insurer to credit for the amount of the saving.
Id. at 19-20 (emphasis supplied). The present case is closely analogous to Robinson. Here, too, Farm Bureau argues that, since an excluded peril  here, water  contributed to the damage done the Coxes' home during the hurricane, Farm Bureau's liability should be reduced (unless the Coxes can prove that wind by itself would have caused the same destruction anyway).
But the Robinson court refused to allow an insurer to pay less than the full amount of the policy even on the assumption that an excluded peril  there, dry rot or termites  had helped cause the total loss. The insurance "for which a premium has been charged and paid" in that case was fire insurance, not insurance against termites or dry rot. Although water helped cause the total loss of the Coxes' *834 home, and water damage decreased the value of the structure, that depreciation does not render the VPL inoperative. On the authority of Robinson, Farm Bureau owes the full amount of the policy, inasmuch as the Coxes' home was a total loss, in not insignificant part[7] as the result of windstorm damage.
The Second District reached a similar result in Netherlands Insurance Co. v. Fowler, 181 So.2d 692, 693 (Fla. 2d DCA 1966), where fire only partially destroyed an insured building, but another excluded peril  there the operation of a municipal ordinance  also came into play, combining with the fire damage to render the structure a total loss: Municipal authorities refused to allow repair of the building, adjudging it a hazard, and ordered its demolition instead. See also Regency Baptist Temple v. Ins. Co. of N. Am., 352 So.2d 1242, 1244 (Fla. 1st DCA 1977) (distinguishing Fowler from cases involving nothing but a partial loss, while agreeing with the rule in Fowler).
The insurance company in Fowler argued that the fire damage could have been repaired, so that the total loss of the building was properly attributable not to the fire, but to the operation of the city building code. It argued that the valued policy law did not control because fire had caused only a partial loss  not the total loss necessary for the VPL to apply  and the insurance policy contained a clause excluding liability for losses caused by ordinances regulating construction.[8] The Second District ruled:
Therefore, we must first determine if the insured has sustained a loss as a result of the fire, which is the peril insured against as defined in Springfield Fire and Marine Insurance Co. v. Boswell, Fla.App.1964, 167 So.2d 780. Secondly, we must determine if the loss to the insured was total. The fire damaged the building to the extent that the City found it unrepairable without any finding as to what repairs, if any, could be made to avoid the order of condemnation.
We agree with the trial court which found the building a total loss under the circumstances of this case, and that the value policy statute applied. . . .
Id. The Fowler court applied the VPL even though another, excluded peril  the city's construction ordinance  also contributed to (actually caused, according to the insurance company) the total loss. The structure in Fowler would not have been deemed a total loss if the court had considered only the covered peril, fire. The fire damage and the ordinance (an excluded peril) combined to cause the total loss. Similarly, a combination of wind and flood *835 caused the total loss of the Coxes' home in the present case.
The dissenting opinion necessarily implies that the VPL has no application if multiple perils contribute to a total loss, at least "in valuing the loss in the nature of liquidated damages." Kirkland, 490 So.2d 149, 153. But the VPL did not require that a covered peril be the sole cause of a total loss, before it was amended in 2005.[9] Before it was amended, the Law was routinely applied in cases where more than one peril combined to create a total loss. Partial recovery under an insurance policy is antithetical to the very notion of a valued policy law, where there has been a total loss.

VII.
Statutes governing insurance contracts are to be construed to protect the public. See Praetorians v. Fisher, 89 So.2d 329, 333 (Fla.1956) ("[T]he public interest requires that a policy be interpreted by the courts in the manner most favorable to the insured, and also that statutes governing insurance contracts be liberally construed so as to protect the public.") (citations omitted). As explained by the Mierzwa court, moreover, not only do statutes trump policy language, when multiple clauses in an insurance policy conflict, the clause providing greater indemnity prevails. See Mierzwa, 877 So.2d at 777-78; see also Poole v. Travelers Ins. Co., 130 Fla. 806, 179 So. 138, 141-42 (1937) ("Provisions of [an insurance] policy limiting or avoiding liability are construed strictly against the insurer and liberally in favor of the insured.").
Farm Bureau was in a position to require the Coxes to present proof of flood insurance coverage before providing windstorm coverage as additional protection against hurricanes. Because the VPL has been amended since, moreover, there is no danger that people will rush out to cancel their flood insurance, counting on windstorm insurers to cover any total loss. People seeking to insure buildings against total loss would also probably be concerned with insuring against partial losses, as to which the VPL has no application in any event.

VIII.
Today's decision serves the VPL's purpose "to simplify and facilitate prompt settlement of insurance claims when a total loss occurs." Springfield, 167 So.2d at 784. More fundamentally, this court lacks the authority  authority which the Legislature does have and actually did exercise after the Coxes' home was destroyed  to amend the VPL to render it nugatory when multiple perils combine to destroy an insured structure.
Affirmed.
THOMAS, J., concurs; POLSTON, J., dissents with opinion.
POLSTON, J., dissenting.
Appellant Florida Farm Bureau Casualty Insurance Company appeals the trial court's final judgment on the pleadings in favor of appellees Eugene A. Cox and Debra *836 Cox for $105,246.60. It is undisputed that the Coxes' property suffered a total loss from both windstorm and tidal surge caused by Hurricane Ivan on September 16, 2004. Although there was some windstorm damage to the property, Farm Bureau alleged that the total loss was caused primarily by flood damage from rising water and storm surge from Hurricane Ivan.[10] Farm Bureau argues that it is not liable for the total loss of the property because it was caused in substantial part by water, which was an unambiguously excluded peril in the homeowners' insurance policy. Farm Bureau argues that a separate flood insurance policy had to be purchased to cover the damage caused by the water.[11]
The Coxes argue that the trial court ruled properly in their favor because notwithstanding the exclusion of water damage as a covered peril in their homeowners' insurance policy, section 627.702(1), Florida Statutes (2004), requires Farm Bureau to pay the total loss. The trial court was bound to follow the only case addressing this issue, Mierzwa v. Florida Windstorm Underwriting Ass'n, 877 So.2d 774 (Fla. 4th DCA 2004) (holding that the plain meaning of section 627.702(1) mandates that if it is found that a carrier has any liability at all to the owner of a building damaged by a covered peril and deemed a total loss, the carrier is liable for the face amount of the policy, regardless of whether the covered peril caused the loss). Section 627.702(1), sometimes referred to as the Valued Policy Law (VLP)[12], states:
In the event of the total loss of any building, structure, mobile home as defined in s. 320.01(2), or manufactured building as defined in s. 553.36(12), located in this state and insured by any insurer as to a covered peril, in the absence of any change increasing the risk without the insurer's consent and in the absence of fraudulent or criminal fault on the part of the insured or one acting in her or his behalf, the insurer's *837 liability, if any, under the policy for such total loss shall be in the amount of money for which such property was so insured as specified in the policy and for which a premium has been charged and paid.
§ 627.702(1), Fla. Stat. (2004).
Farm Bureau argues that this court should interpret the statute differently from Mierzwa so that it is not liable for damages caused by perils excluded from the policy. Because section 627.702(1) addresses only valuation in the event of a total loss and does not address insurer liability where the damages were caused by both excluded and covered perils, the policy exclusions should be given effect. I agree with Farm Bureau that it is not responsible for losses caused by water damage, a peril excluded from the policy. Therefore, I would reverse in part, and certify conflict with Mierzwa.
I agree with the majority's statement of its holding that "the VPL forecloses an insurer's challenge to the measure of damages in the event of a total loss." Although I agree with the ruling as stated, the majority does not stop there. Instead of treating the VPL as only a valuation statute as plainly stated by the Legislature, the majority opinion aligns this court with the Fourth District Court of Appeal in Mierzwa by reading into the statute a requirement for the insurer to pay for damages caused by both excluded and covered perils. "Causation" is not mentioned in the statute. Because it is not mentioned, the statute has no application other than to conclusively establish the property's value when there is a total loss. Therefore, the unambiguous terms of the policy must be given effect.
I also agree with the majority's statements that we must exercise judicial restraint, recognize the Legislature's power to enact substantive law, abide by separation of powers, and interpret statutes by the objective indication of their words. Applying those same principles, but interpreting the statute in a different way, I must respectfully dissent.

I. BACKGROUND
Farm Bureau issued a homeowners' insurance policy to the Coxes covering their residence in Santa Rosa County for loss or damage caused by windstorm and other named perils with limits of $65,000 for the dwelling, $6,500 for other structures, $32,500, for personal property and $13,000 for loss of use, totaling $117,000. The policy excluded water damage, including flood and tidal surge, under the following provision:
1. We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss.
. . .
c. Water Damage, means:
(1) Flood, surface water, waves, tidal water, overflow of a body of water, or spray from any of these, whether or not driven by wind.
The Coxes did not carry flood insurance.
On September 16, 2004, while the Farm Bureau policy was in full force and effect, the Coxes' property suffered extensive damage from both windstorm and tidal surge caused by Hurricane Ivan. The parties concede the property was rendered a total loss. Farm Bureau filed a complaint for declaratory judgment, seeking an interpretation of section 627.702(1), Florida Statutes (2004). Farm Bureau further alleged that, based on its inspection of the Coxes' home after the hurricane, there were damages to the home caused by the wind totaling $11,583.93. Although Farm *838 Bureau acknowledged the dwelling was a total loss, it argued that this total loss was caused primarily by flooding, and that windstorm damage caused less than fifty percent of the total damage.
The Coxes filed an answer and counterclaim for damages. In Count I of their counterclaim, the Coxes demanded judgment for damages against Farm Bureau for breach of contract, plus attorney's fees, costs and prejudgment interest. In Count II, they demanded judgment for damages against Farm Bureau for "the full value of their policy" under Florida's Valued Property Law, section 627.702, Florida Statutes (2004), plus attorney's fees, costs and prejudgment interest.
The Coxes filed a motion for judgment on the pleadings based on Mierzwa and section 627.702, and demanded judgment for the face amount of the policy ($65,000 for the dwelling, $6,500 for other structures, $32,500 for personal property and $13,000 for loss of use, totaling $117,000), attorney's fees, costs, and prejudgment interest. In response, Farm Bureau argued that judgment on the pleadings was premature because it was entitled to conduct discovery to determine the extent of any wind damages as compared to flood damages to the home.[13]
Based on the uncontroverted facts disclosed by the pleadings, the trial court granted the insureds' motion for judgment on the pleadings. In its order, the trial court determined that Mierzwa represented binding and controlling precedent and therefore ordered entry of judgment in the insureds' favor for $105,246.60.[14] The trial court entered final judgment accordingly, reserving jurisdiction to determine the Coxes' attorney's fees and costs. Farm Bureau appealed the trial court's final judgment.

II. PLAIN MEANING OF SECTION 627.702(1)  FLORIDA'S VPL
Section 627.702(1) states in relevant part: "In the event of the total loss of any building . . . insured . . . as to a covered peril, . . . the insurer's liability, if any, under the policy for such total loss shall be in the amount of money for which such property was so insured as specified in the policy and for which a premium has been charged and paid."
The statute indicates, in its plain language, that if there is a total loss, it shall be valued at the amount of money specified in the policy. The value specified in the Coxes' policy is $65,000 for the dwelling. According to the statute, if there is a total loss, the insurance company cannot argue that the property is over-insured and the value is less than the policy's specified amount for which premiums were paid. Farm Bureau is not taking such a position in this case. It accepts the $65,000 value specified in the policy as the total loss.[15]
*839 Moreover, the last phrase in the statute  "and for which a premium has been charged and paid"  provides a "benefit of the bargain" test. These express words of the statute indicate that the VPL does not expand coverage to a peril that is excluded and for which a premium has not been charged or paid. The pleadings in this case, that final judgment was entered on, do not allege that the Coxes paid a premium for flood insurance. In fact, the exact opposite is true; damage from flood waters is specifically excluded from the policy coverage.
The Coxes argue that the statute plainly reads that where there is a total loss and there is a covered peril that caused any amount of damage, then the insurance company is liable for the entire amount of the total loss as valued in the policy. For example, under their argument, if there is a total loss to the dwelling but the wind caused only 1% of the damage, then Farm Bureau is responsible for $65,000 (the policy amount) rather than $650.
Moreover, Farm Bureau's policy excludes losses caused by the insured's neglect to use all reasonable means to save and preserve property at and after the time of a loss. The Coxes acknowledged at oral argument that, hypothetically, under their statutory interpretation, even if homeowners did not attempt to save their property from runoff water, and assuming such action would have saved their property from 99% of the damage caused to their home, Farm Bureau would still be liable for $65,000 rather than $650 (where there is only 1% wind damage).
I disagree with the Coxes' argument that the statute extends such coverage liability to the insurance company. Had the legislature intended such extreme results, it could have said so with greater clarity. See Fla. Wildlife Fed'n v. State, Dep't of Envtl. Regulation, 390 So.2d 64, 67 (Fla. 1980) (recognizing that, "[i]f the legislature had meant for the special injury rule to be preserved in the area of environmental protection, it could easily have said so"); see also United of Fla., Inc. v. Illini Fed. Sav. & Loan Ass'n, 341 So.2d 793, 794 (Fla. 2d DCA 1977).
As previously mentioned, the statute only speaks to valuation, and does not address causation at all. The policy, not the statute, addresses causation. "Insurance contracts are construed in accordance with the plain language of the policies as bargained for by the parties." Prudential Prop. & Cas. Ins. Co. v. Swindal, 622 So.2d 467, 470 (Fla.1993). The unambiguous language of the policy excludes water damage. Pursuant to this exclusion, Farm Bureau should not be held responsible for the damage to the Coxes' property caused by water. However, because the property is a total loss, the VPL still controls the valuation of the property. Therefore, because the property in this case is a total loss, the value of the property is set by the policy value of $65,000. The parties cannot *840 dispute that this is the correct value of the property. Accordingly, this value, $65,000, should be used to determine the amount of losses caused by the wind, a covered peril. For example, if the wind caused 10% of the damage, then Farm Bureau is liable for $6,500.[16]
However, my interpretation of the VPL, set forth above, is in conflict with the Fourth District Court of Appeal's interpretation of the statute. See Mierzwa v. Fla. Windstorm Underwriting Ass'n, 877 So.2d 774 (Fla. 4th DCA 2004). Because of this conflict, I take a further examination of the VPL statute, including its history and prior interpretations.

III. HISTORY OF THE VPL
Florida's VPL has existed, in one form or another, since 1899. See Hartford Fire Ins. Co. v. Redding, 47 Fla. 228, 37 So. 62, 64-65 (1904).[17] In its first encounter with the VPL, the Florida Supreme Court set forth its understanding of the statute's purpose:
The statute requires the insurer to fix the insurable value of a building, and to specify such value in the policy, and the measure of damages in case of total loss is fixed at the amount mentioned in the policy upon which a premium is paid. . . . Its principal object and purpose is to fix the measure of damages in case of loss total, or partial; and, to this end, it requires the insurer to ascertain the insurable value at the time of writing the policy, and to write it therein.
Id. at 65. Because, as originally enacted, the VPL was limited to fire insurance, Hartford Fire, 37 So. at 64, it was applied to mean that "the value of a fire insurance policy, upon total loss by fire or lightning, must be paid to the insured." Am. Ins. Co. of Newark, N.J. v. Robinson, 120 Fla. 674, 163 So. 17, 19 (1935).
In Robinson, the Florida Supreme Court addressed a claim by the insured on a $3,000 fire insurance policy on a building completely destroyed by fire. The court stated:
As to defendant's second plea of depreciation by reason of `termites' or `dry rot' attacking the property insured after the policy of insurance was issued, the law is that valued policy statutes, such as ours, will not permit a reduction of the amount of insurance specified in the policy by reason of depreciation in value caused by use, decay, accident, casualty, or otherwise, where such change arises from a supervening cause occurring subsequent to the issuance of the policy, and the allowance of such reduction will not amount to a change of the value fixed by the parties pursuant to the *841 statute at the time the contract of insurance was issued.

163 So. at 19-20 (emphasis added). The express language of the court indicates that the insurance company could not change the valuation of the policy because of various causes which may have affected the market value. It was required to pay the policy amount as required by the statute. The issue was valuation of the property. The Court did not address exclusions from the policy at all, contrary to the discussion of the case in the majority opinion.
The majority states that the insurance company argued in Robinson that it should not be required to pay the face amount of the policy because dry rot or termites were a cause of the destroyed building, these events were excluded from coverage, and they caused a decrease in the building's value. To the contrary, there is no mention in Robinson that dry rot or termites were excluded from coverage. Significantly, there is no dispute in Robinson that fire was the sole cause of the building's destruction. The argument presented by the insurer was that dry rot or termites caused the value of the building, which was destroyed by fire, to be less than the face amount of the policy. Id. at 19 (rejecting the insurance company's argument of "depreciation by reason of `termites' or `dry rot' attacking the property insured after the policy of insurance was issued"). Those are not the facts presented in this case. Here, Farm Bureau does not dispute the valuation of the policy, but alleges that the total loss was caused by flood damage, an excluded peril, which was not at issue in Robinson.
This court addressed the VPL's application to multiple insurers in Springfield Fire & Marine Ins. Co. v. Boswell, 167 So.2d 780 (Fla. 1st DCA 1964). The residence in that case was under a contract for purchase and sale when it was destroyed by a fire. Id. at 781. Both the plaintiff-owners and the purchasers had fire-insurance policies in place at the time of the fire. Id. The purchasers' insurer paid its policy limits and the sellers brought an action against their insurer, when coverage was denied. Id. This court held that each insurer was liable for the full amount of its policy, barring fraud or other conduct giving rise to a valid coverage defense, but construed the VPL as nothing more than a liquidated-damages provision:
Undoubtedly an important object of the statute is also to simplify and facilitate prompt settlement of insurance claims when a total loss occurs. It serves to remove what would otherwise be a very troublesome and difficult issue to resolve either between the parties by negotiation or by the courts in litigation. This issue is the money loss sustained which the insured must indemnify. The value specific property had is hard to ascertain after its destruction because the usual evidence relied upon for such assessment is unavailable. . . . A solution to this is found in the statute which in effect requires the parties to ascertain and agree in advance what the value is and in the case of total loss by the insured peril this amount shall be paid as liquidated damages.
Id. at 784.
In 1982 the VPL was amended to expand its application from fire and lightening to all covered perils. Ch. 82-243, § 539, at 1551-52, Laws of Fla. Nevertheless, this court has adhered to this view of the VPL's purpose. See Hallcom v. Allstate Ins. Co., 654 So.2d 245, 247 (Fla. 1st DCA 1995); Underwriters Ins. Co. v. Kirkland, 490 So.2d 149, 153 (Fla. 1st DCA 1986).
Recently, in Opar v. Allstate Insurance Co., 751 So.2d 758 (Fla. 1st DCA 2000), *842 disapproved on other grounds, Johnson v. Nationwide Mutual Insurance Co., 828 So.2d 1021 (Fla.2002), this court addressed a claim in Destin, Florida, caused by Hurricane Opal. In that case, Allstate denied the insureds' claim for loss because it was caused by storm surge, a loss not covered under the policy. Id. at 759. The insureds claimed that their property was damaged in full or in part by windstorm and demanded an appraisal. The court ordered an appraisal and noted that, "[i]f the trial court determines, when the case is fully tried on its merits, that the damage was caused by a covered peril, windstorm, then Allstate will be bound immediately by the amount ascertained by appraisal. . . . If, on the other hand, a coverage defense is determined successful in whole or in part, then Allstate would either not be liable, or would be liable only in part for the amount." 751 So.2d at 761 (citation omitted). Although we agree with the Coxes that this statement by the court is dicta, it is persuasive that the policy exclusion for water was to be given effect.

IV. MIERZWA

A. The Mierzwa Decision
In Mierzwa v. Florida Windstorm Underwriting Ass'n, 877 So.2d 774 (Fla. 4th DCA 2004), the Fourth District Court of Appeal addressed how the VPL applies when there are multiple causes of damage, including a peril excluded from policy coverage. In that case, the homeowner had wind insurance with one carrier and flood insurance with another. Id. at 775. The home was damaged by both wind and water during Hurricane Irene, and the home was effectually condemned by the local authority upon its determination that the costs of repairs exceeded half the cost of the building. Id. The trial court held that the wind insurer was only liable for its pro rata share, not for the face amount of the policy. Id.
On appeal, the Fourth District reversed the trial court, and ruled in favor of the insured. The court held that the trial court erred by requiring the insurer to pay a pro rata amount according to the damages caused by wind, the covered peril. The Fourth District awarded the insured the policy limits based on two reasons. Id. at 777, 780.
First, the court interpreted section 627.702(1) in the same manner argued by the Coxes, based on its plain reading of the statute. The court discussed the language of the VPL, and specifically focused on the phrase "if any." The court interpreted the statute to mean that if a damaged building is "insured as to a covered peril," then any liability of such insurer is for the face amount of the policy. In other words, "if the insurance carrier has any liability at all to the owner for a building damaged by a covered peril and deemed a total loss, that liability is for the face amount of the policy." Id. at 775-76.
Additionally, the court found that the anti-concurrent cause clause in the policy, which excludes liability for flood damage, is in conflict with the text of the VPL statute, and this creates an ambiguity in the policy. The court thus interpreted the contract in a manner to give greater indemnity to the insured. Id. at 777-78. The court ruled that if the insurer has any liability, "even a fractional share of the total damage," it is liable for the face amount of the policy pursuant to the VPL. Id. at 778. However, the court refused to address the "parade of horribles" "when its covered peril might be responsible for, say, only 1% of the total damage." Id. at 778 n. 5. The Fourth District thus construed the VPL to mean that, when two (or more) perils combine to cause a total loss, an insurer who contracted to provide *843 coverage for only one of those perils and expressly not for the other is nonetheless liable for its policy limits.
The Fourth District's second alternative reason for its holding in favor of the insured was there was no evidence that wind damage alone could not be responsible for the total loss. The court provided: "[e]ven if the VPL allowed for pro rata liability where damages result from multiple perils, here the carrier has failed to show that the condemnation resulting from the local ordinance was not attributable solely to the wind damage. . . . Because [the carrier] has failed to make known the existence of any evidence showing that wind damage alone could not possibly have resulted in the building's condemnation, the owner was entitled to the face amount of the policy on account of the windstorm damage." Id. at 779.

B. Analysis of Mierzwa
I agree with Mierzwa to the extent it provides that if a covered peril is the cause of the total loss, then the insured is entitled to the face amount of the policy in accordance with the statute, the court's second alternative reason for its holding. However, I disagree with the Fourth District to the extent its decision requires an insurer to pay the face value of the policy where the covered peril, although causing some damage, did not alone cause the total loss.
The Mierzwa decision stretches the VPL statute beyond its plain language and intended scope. The purpose of the VPL statute is to have the parties agree beforehand to the value of the property, so that upon the happening of a total loss, no time or court resources need be wasted on arguments about the amount the insured should recover. The insurer is in no position to argue about depreciation because the insurer was able to set the valuation before the loss and to charge whatever premium was deemed appropriate. Similarly, the insured is in no position to argue that the property has appreciated in value because the insured, too, had the pre-loss opportunity to agree upon the valuation stated in the policy, and to pay only the premium warranted by that valuation. See 16 Richard A. Lord, Williston on Contracts § 49:30 at 271 (4th. ed. 2000) ("In [the "valued policy"] type of agreement, the value of the object being insured is determined in advance, with both parties agreeing to this valuation or appraisal. Once this value is fixed in the policy, both parties are bound by it and, in the absence of fraud or willful destruction of the property by the insured, the insurer must pay this amount in case of a total loss, regardless of what the property's actual value might be.").
In short, the entire point of the VPL statute is to prevent after-the-fact quarreling over what amount is recoverable under the policy. The insurer has received the premium commensurate with the agreed valuation, and the insured has paid the premium commensurate with the agreed valuation. Under such circumstances, each party has received that for which it bargained.
However, Mierzwa extends the VPL statute to write the specified exclusions out of the policy and deprives the insurance company from the contractual terms on which it priced the policy's premiums. The Florida Supreme Court has repeatedly reiterated that the "guiding principle" of insurance contract construction is that policies are to be construed in accordance with "the plain language of the polic[y] as bargained for by the parties." Fayad v. Clarendon Nat. Ins. Co., 899 So.2d 1082, 1086 (Fla.2005) (quoting Auto-Owners Ins. Co. v. Anderson, 756 So.2d 29, 33 (Fla. 2000)) (alteration in original). As this *844 court has stated on the subject of plainly-worded exclusions:
It is axiomatic that parties sui juris are bound by their valid contracts and that where a particular risk is expressly and clearly excepted from the risks assumed by an insurer, the courts are without authority to enforce indemnity for losses resulting from such excepted risks. The exclusionary clause marks the boundary of the coverage of the policy and the courts will not hold the insurer to the coverage of risks which it has expressly excluded.

N.H. Ins. Co. v. Carter, 359 So.2d 52, 54 (Fla. 1st DCA 1978) (emphasis added).
Nothing in the VPL statute suggests that in the event of a total loss an insurer will be required to pay for losses resulting from perils that are not covered by the policy sold to the insured. The statute only requires payment of the face value of the policy where a total loss from a covered peril has occurred and the insurer has received the premium for providing coverage for that loss. To reiterate the pertinent language of the statute: "In the event of the total loss of any building . . . located in this state and insured by any insurer as to a covered peril, the insurer's liability, if any, under the policy for such total loss shall be in the amount of money for which such property was so insured as specified in the policy and for which a premium has been charged and paid." § 627.702(1), Fla. Stat. (2004). There are no allegations in the pleadings indicating that Farm Bureau charged a premium for flood coverage. To the contrary, flood coverage is expressly excluded by the policy.
This Court recognized in Springfield, that the VPL "requires the parties to ascertain and agree in advance what the value is and in the case of total loss by the insured peril this amount shall be paid as liquidated damages." Springfield, 167 So.2d at 784. The VPL's purposes of fixing the insurer's liability for a covered peril at the outset and preventing an insurer from collecting premiums and then disavowing total-loss coverage are not served by imposing liability on an insurer for a total loss where the total loss was caused by an excluded peril.
Contrary to Mierzwa, I find no conflict between the VPL statute and the policy exclusions in this case. In Mierzwa, the court found an ambiguity in the insurance policy provision excluding water damage because the policy language failed to address the statute. This failure to address the statute, the court reasoned, created a conflict between the statute and the policy, which then created an ambiguity that must be construed in favor of providing indemnity to the insured. Mierzwa, 877 So.2d at 777-78. This reasoning is circular. The policy does not address the statute because they address different topics and therefore there is no need for the policy to address the statute. The statute addresses valuation of the property in the event of a total loss. The policy addresses the perils that are covered and those that are excluded. There is no conflict so that both the statute and the policy should be given effect. Accordingly, although the VPL operates to preclude the parties from disputing the $65,000 valuation of the Coxes' dwelling upon a total loss, the policy determines the types of perils for which the insurer is liable. In this case, the insurer is liable for damages caused by wind, but not water damage.
Additionally, the analysis in Mierzwa places great significance on the statutory phrase "if any." The Mierzwa court reasoned that the only meaning the phrase "if any" could have is that if the insurer has to pay anything in connection with a total loss, it must pay the policy face value. *845 The more reasonable meaning of the phrase, however, is that the insurer may have coverage defenses, as a result of which the insurer has no liability at all under the policy. As the Florida Supreme Court has stated: "The statute does not undertake to deprive the insurer of any proper defense it may have to an action upon the policy, except in respect to the measure of damages and the authority of certain agents." Hartford Fire, 37 So. at 67; see also Am. Ins., 163 So. at 19 (analyzing a defense of fraud in procurement of insurance, and noting that Florida's valued policy laws do not preclude such a defense).
The legislative history supports this interpretation. The phrase "if any" first existed in the VPL when the statute only addressed total losses caused by covered perils. Before the VPL was amended in 1982, the pertinent part of the statute was as follows:
In event of total loss by fire or lightning of any building . . . located in this state and insured by any insurer as to such perils, . . . the insurer's liability, if any, under the policy for such total loss shall be in the amount of money for which such property was so insured as specified in the policy and for which premium has been charged and paid.
§ 627.702(1), Fla. Stat. (1981) (emphasis added).[18]
Since the pre-1982 versions of the VPL only applied to a total loss of a building caused by fire or lightning, where the building was insured as to such perils, the "if any" language was not intended to mean that the insurer is required to pay for the total loss of a building when it was caused by an excluded peril. The language "if any" was never intended to remove from the insurer any coverage defenses except with respect to the measure of damages.
The 1982 amendment expanded the application of the VPL's total loss provision from just fire or lightning to all covered perils. Ch. 82-243, § 539, at 1551-52, Laws of Fla. However, the "if any" language remained: "the insurer's liability, if any, under the policy for such total loss shall be in the amount of money for which the property was so insured as specified in the policy and for which premium has been charged and paid." Id. (emphasis added).
Nothing in the 1982 legislative history indicated an intent to alter the meaning of the VPL and expand its coverage to perils that are expressly excluded by an insurance policy. Instead, the legislative history shows the opposite intent. The staff analysis regarding the 1982 amendment to the VPL provides the following as the effect of the proposed change:
Applies the valued policy law to all covered perils, rather than fire and lightning only. Therefore, policy limits would be required to be paid if there is a total loss to a building as a result of any covered peril.

HB 4F (1982) Staff Analysis 7 (April 13, 1982) (emphasis added).[19]
Indeed, the VPL expressly states that an insurer's liability for a total loss is "in the amount of money for which such property was so insured as specified in the policy and for which a premium has been paid." § 627.702(1), Fla. Stat. (2004). Interpreting the VPL to compel liability for a total loss in the event of any liability, without regard for the policy and the coverage *846 for which the premiums were paid, clearly runs contrary to the VPL's express language.
Florida's VPL is merely a statutory liquidated-damages provision that, since its 1899 inception, has been intended only to prevent an insured from over-insuring property and ensuring that a property insurer does not value property, collect premiums based on that valuation, and then withhold payment of the policy limits when the property is a total loss. The Mierzwa interpretation stretches the statute far beyond its narrow scope.

V. LEGISLATIVE CHANGES TO FLORIDA'S VPL AFTER MIERZWA
In 2005, the Florida Legislature amended section 627.702. Effective June 1, 2005, section 627.702(1) no longer provides that upon a total loss resulting from a covered peril "the insurer's liability, if any, under the policy for such total loss" shall be the policy limits. Ch.2005-111, §§ 16, 30, at 1092-93, 1103, Laws of Fla. Rather, the pertinent language states that "the insurer's liability under the policy for such total loss, if caused by a covered peril," shall be the policy limits. § 627.702(l)(a), Fla. Stat. (2005). The statute also includes the following new provision:
The intent of this subsection is not to deprive an insurer of any proper defense under the policy, to create new or additional coverage under the policy, or to require an insurer to pay for a loss caused by a peril other than the covered peril. In furtherance of such legislative intent, when a loss was caused in part by a covered peril and in part by a noncovered peril, paragraph (a) does not apply. In such circumstances, the insurer's liability under this section shall be limited to the amount of the loss caused by the covered peril. However, if the covered perils alone would have caused the total loss, paragraph (a) shall apply. The insurer is never liable for more than the amount necessary to repair, rebuild, or replace the structure following the total loss, after considering all other benefits actually paid for the total loss.
§ 627.702(l)(b), Fla. Stat. (2005).
The 2005 amendment is not retroactive. § 627.702(1)(c), Fla. Stat. (2005) (stating "[i]t is the intent of the Legislature that the amendment to this section shall not be applied retroactively and shall apply only to claims filed after [the] effective date of such amendment"). After the 2005 amendment to section 627.702(1), the statute for the first time addressed how it should be applied where covered and excluded perils both cause damages to a structure. However, the relevant claims in the present case were brought prior to the effective date of the 2005 amendment, and therefore, the 2004 version of the statute applies in this case. When viewed in the context of the 2005 amendment, it is more evident that the pre-2005 statute simply does not address losses caused by covered and excluded perils. There is no similar "causation" language in the pre-2005 version of the statute  it is completely absent.
Accordingly, because the pre-2005 version of the statute, which is applicable in this case, does not address losses caused by covered and excluded perils, there is no conflict between the policy provision excluding from liability damage caused by water or flooding, and section 627.702(1). The pre-2005 statute does not mandate that the insurer of a covered peril pay the policy limits when an excluded peril causes the total loss. In the absence of a statutory command, Farm Bureau is accordingly entitled to invoke the flood exclusion in the Coxes' policies and the parties are bound by their contract.

*847 Conclusion

Accordingly, I would certify conflict with Mierzwa and hold that Florida's VPL, section 627.702(1), Florida Statutes (2004), addresses only valuation in the event of a total loss and does not address insurer liability where the damages were caused by both excluded and covered perils. Therefore, the policy exclusion for water damage in this case should be given effect. I would reverse the final judgment amount for the dwelling, personal property, and prejudgment interest related to those amounts. On remand, I would direct the trial court to accept the valuation of the dwelling and personal property as stated in the policy and to then apply the percentage caused by a covered peril. I would affirm the judgment amounts for appurtenant structures, loss of use, and the prejudgment interest related to those amounts.
I respectfully dissent.
ON APPELLANT'S MOTION FOR REHEARING, MOTION FOR REHEARING EN BANC, AND/OR MOTION FOR CERTIFICATION
PER CURIAM.
Appellant's motion is granted to the extent that we certify the following question to the Florida Supreme Court as a question of great public importance:
DOES SECTION 627.702(1), FLORIDA STATUTES (2004), REFERRED TO AS THE VALUED POLICY LAW, REQUIRE AN INSURANCE CARRIER TO PAY THE FACE AMOUNT OF THE POLICY TO AN OWNER OF A BUILDING DEEMED A TOTAL LOSS WHEN THE BUILDING IS DAMAGED IN PART BY A COVERED PERIL BUT IS SIGNIFICANTLY DAMAGED BY AN EXCLUDED PERIL?
The motion is otherwise denied.
BENTON, POLSTON, and THOMAS, JJ., concur.
NOTES
[1] The Legislature decided that the 2004 VPL required major revision. But we are not free to interpret the 2004 Valued Policy Law as if it were the 2005 Valued Policy Law. The Legislature made no findings that the court in Mierzwa v. Florida Windstorm Underwriting Ass'n., 877 So.2d 774 (Fla. 4th DCA 2004) reached an incorrect decision interpreting the 2004 statute. Instead, the Legislature specifically ensured that the Mierzwa interpretation would not control prospectively by changing the law, which is, of course, the Legislature's prerogative. Significantly, the Legislature commanded that the new law would not be applied retroactively. Both the substantive changes and the non-retroactivity clause give support to and provide further rationale for our decision, which is firmly grounded, however, in the language of the 2004 statute.
[2] The current statute contains this language, which was not part of the version of the VPL that governs the present case, and is not to be given retroactive effect:

The intent of this subsection is not to deprive an insurer of any proper defense under the policy, to create new or additional coverage under the policy, or to require an insurer to pay for a loss caused by a peril other than the covered peril. In furtherance of such legislative intent, when a loss was caused in part by a covered peril and in part by a noncovered peril, paragraph (a) does not apply. In such circumstances, the insurer's liability under this section shall be limited to the amount of the loss caused by the covered peril. However, if the covered perils alone would have caused the total loss, paragraph (a) shall apply. The insurer is never liable for more than the amount necessary to repair, rebuild, or replace the structure following the total loss, after considering all other benefits actually paid for the total loss.
§ 627.702(1)(b), Fla. Stat. (2005).
[3] Florida's VPL has been in effect in one form or another since 1899. See Ch. 4677, §§ 1-2, at 33-34, Laws of Fla. (1899). According to the Staff Report, the Law was changed in 1982 because

[u]nder current law the coverage applies only to loss by fire or lightning. At the time the valued policy law was originally written most coverage did just cover those perils. Now, coverage is much broader, and to the extent that the valued policy law is good public policy it should apply to all covered perils.
Fla. H.R. Comm. on Ins., HB 4-F, as amended by HB 10-G (1982) Bill Analysis 91 (rev. June 3, 1982) (on file with the Fla. State Archives, Dep't of State).
[4] Our decision rests on the statutory language itself. The legislative history of the recent amendment to the VPL leaves many questions unanswered. See Ch.2005-111, at 1063, Laws of Fla. (Committee Substitute for Senate Bill No. 1486); see also Fla. S. Comm. on Banking & Ins., CS for SB 1486 (2005) Staff Analysis and Economic Impact Statement 1-7 (Mar. 9, 2005) (on file with comm.), available at http://www.flsenate. gov/data/session/2005/Senate/bills/billtext/pdf/s1486c1.pdf (discussing statutory changes to section 627.701, Florida Statutes, in analysis performed prior to floor amendment to Senate Bill 1486 adding changes to section 627.702). A similar bill, Senate Bill 1488, proposed to amend section 627.702, but did not include language stating that the amendment was not to be retroactive. See Fla. CS for CS 1488, § 15, at 57 (2005), available at http://www. flsenate. gov/data/session/2005/Senate/bills/analysis/pdf/2005s1486.bi.pdf; Fla. CS for SB 1488, 15, at 58 (2005), available at http://www.flsenate. gov/data/session/2005/Senate/bills/billtext/pdf/s1488c1.pdf. The staff analysis accompanying the first proposed committee substitute for Senate Bill 1488 claimed, moreover, that "this would reverse the holding of the decision in Mierzwa." Fla. S. Comm. on Banking & Ins., PCS for SB 1488 (2005) Staff Analysis and Economic Impact Statement 20 (Mar. 26, 2005) (on file with comm.), available at http://www.flsenate. gov/data/session/2005/Senate/bills/analysis/pdf/2005s1488-pcs.bi. pdf. The same staff analysis also stated that, although the amendment was not expressly retroactive, "it may have that result." Id. at 21; see also Fla. S. Comm. on Banking & Ins., CS for SB 1488 (2005) Staff Analysis and Economic Impact Statement 7 (Apr. 7, 2005) (on file with comm.), available at http://www.flsenate. gov/data/session/2005/Senate/bills/analysis/pdf/2005s1488.bi.pdf ("The Legislature should consider amending the valued policy law . . . to clarify . . . that the Fourth DCA opinion in Mierzwa . . . was incorrect."). But Senate Bill 1488 ultimately did not pass, and Committee Substitute for Senate Bill 1486, which did pass, included the language which specified that the changes to section 627.702 were not retroactive.
[5] In Springfield, the court determined that even where there were multiple policies in place, the same principles applied, and that the statute entitled the insured to recover under each of the policies. See Springfield Fire & Marine Ins. Co. v. Boswell, 167 So.2d 780, 784 (Fla. 1st DCA 1964) ("The aggregate liability is the total of the various values specified and for which an appropriate premium has been paid."). After explaining the purpose of the statute, the court explained why the scheme was fair:

[T]he insured is stating the limits of his recovery and at the same time the insurer is basing his premium charges on the extent of his maximum exposure. When the total loss occurs neither can contend the value of the destroyed property is any different from what they had previously specified. When multiple policies are permissible, . . . the same principles apply. The aggregate liability is the total of the various values specified and for which an appropriate premium has been paid.
Id.
[6] The decision in Millers' Mutual Insurance Association of Illinois v. La Pota, 197 So.2d 21 (Fla. 2d DCA 1967), affords another example of the VPL's taking precedence over a contrary policy provision. There, the insurance company argued that its liability for a total loss should be shared with another insurance company on the same risk, because its policy contained a pro rata liability clause. The Second District held that the valued policy law was applicable and controlled, trumping the pro rata policy provision. See id. at 24-26.
[7] Farm Bureau's complaint for declaratory judgment alleges that perils other than windstorm were the "primary" cause of the total loss of the Coxes' home. Because we are reviewing judgment on the pleadings, we "`must accept as true all well-pleaded allegations of the non-moving party. Judgment on the pleadings can be granted only if, on the facts as admitted for purposes of the motion, the moving party is clearly entitled to judgment.'" Crocker v. Pleasant, 778 So.2d 978, 981 n. 4 (Fla.2001) (quoting Windle v. W.W. Windle Co., 731 So.2d 36, 37 (Fla. 4th DCA 1999)). As pleaded, however, Farm Bureau's complaint admits the possibility that wind may have caused forty-nine per cent of the damage. At the lower end of the spectrum  where a covered peril causes only minor damage, the deductible  deductibles in "hurricane" policies are strictly regulated, see § 627.701, Fla. Stat. (2004)  comes into play, and damage less than the deductible would not create "any" liability for the windstorm insurer.
[8] In Fowler, too, the insurance "for which a premium has been charged and paid" was fire insurance, not insurance against losses caused by ordinances regulating construction.
[9] The decision in Opar v. Allstate Insurance Co., 751 So.2d 758 (Fla. 1st DCA 2000), disapproved sub nom. Johnson v. Nationwide Mut. Ins. Co., 828 So.2d 1021, 1026 (Fla.2002) is not to the contrary. In Opar, the insureds brought suit for a declaratory judgment declaring them entitled to an appraisal. Id. at 759. The insurance company had taken the position that windstorm did not contribute to the loss at all, and sought to avoid any liability whatsoever. Id. at 759. We held only that the insureds were entitled to an appraisal even before it was determined whether there was coverage. Id. at 760-61. The valued policy law was not in issue and was never addressed by the court.
[10] "Because this case is before us after the trial court granted a motion for judgment on the pleadings, our inquiry is a narrow one and we `must accept as true all well-pleaded allegations of the non-moving party. Judgment on the pleadings can be granted only if, on the facts as admitted for purposes of the motion, the moving party is clearly entitled to judgment.'" Crocker v. Pleasant, 778 So.2d 978, 982 n. 4 (Fla.2001). Our standard of review is de novo. See Schwartz v. Greico, 901 So.2d 297, 299 (Fla. 2d DCA 2005) (reviewing a trial court's decision granting a judgment on the pleadings by the de novo standard); Bruner v. GC-GW, Inc., 880 So.2d 1244, 1246 (Fla. 1st DCA 2004) ("It is well established that the construction of a statute is a question of law reviewable de novo.").
[11] Virtually all homeowners' insurance policies exclude flood, which has traditionally been a separately insured risk. Since 1968, the federal government has established its policy of promoting subsidized flood-only insurance through the National Flood Insurance Program ("NFIP"), based on findings that private insurers were not providing flood insurance and the insurers were not able to make flood insurance available at reasonable rates. See Flick v. Liberty Mut. Fire Ins. Co., 205 F.3d 386, 387-89 (9th Cir.2000) (discussing background leading to NFIP and policies promoted thereby).
[12] "Valued policy" laws are quite common. 12 Lee R. Russ in consultation with Thomas F. Segalla, Couch on Ins. § 175:103 (3d ed.2005). Such statutes require an insurer to "fix the value of the property insured, which shall be conclusive and the amount recoverable in case of a total loss." Id. Under such statutes, the policy limits "determine[] the amount of recovery in case of total loss, and the insured need not prove value." Id. at § 175:105. The purpose of such statutes "is to protect the insured by relieving him or her of the burden of proving the full value of his or her property after total destruction, and to prevent insurers from receiving premiums on over-valuations but thereafter repudiating their contracts when it becomes to their interest to do so." Id. at § 175:103.
[13] Farm Bureau makes similar arguments on appeal that I reject. There are no additional facts to be discovered for the court to interpret section 627.702(1). Although I would reverse the trial court's ruling because I disagree with Mierzwa, the trial court properly applied binding precedent by granting the motion for judgment on the pleadings and rejecting Farm Bureau's argument for discovery.
[14] The amount of the judgment was computed by taking the face amount of the policy of $117,000, subtracting previously paid amounts totaling $17,350.52, and adding prejudgment interest of $5,597.12 accrued from the date of the loss.
[15] Farm Bureau argues on appeal that the trial court improperly applied section 627.702(1) to personal property, appurtenant structures, and loss of use, which are excluded from the statutory language. The Coxes respond by stating that although the trial court erred, the ruling should not be reversed on this ground because Farm Bureau waived appellate review of the issue by failing to argue the point in the trial court. See Wilkerson v. Alachua County, 675 So.2d 951, 952 (Fla. 1st DCA 1996). I agree with the Coxes that Farm Bureau waived this statutory exclusion issue.

Moreover, on appeal, although Farm Bureau argues the causation issue relating to personal property damages, as it did for the dwelling, it does not make the same argument for appurtenant structures and loss of use. Therefore, I would reverse the final judgment amount for the personal property and related prejudgment interest, on the same basis that I would reverse as to the dwelling. On remand, I would direct the trial court to accept the valuation of the personal property as stated in the policy and to then apply the percentage caused by a covered peril. I would affirm the judgment amounts for appurtenant structures and loss of use, and the related prejudgment interest.
[16] Farm Bureau does not dispute that if water had damaged the home in part, but the wind acting alone would have been sufficient to cause the total loss, then Farm Bureau would be liable for the entire loss, valued at the amount specified by the policy. However, if wind had damaged the home in part, but the water acting alone would have been sufficient to cause the total loss, Farm Bureau would still be liable for the damage caused by the wind because it is covered under the policy.
[17] In 1874, Wisconsin apparently became the first state to adopt a valued policy law. Seider v. O'Connell, 236 Wis.2d 211, 612 N.W.2d 659, 671-72 (2000). VPL statutes, like Florida's original VPL, were limited to fire insurance policies and were motivated by a "growing number of incendiary fires on overinsured property," which had "prompted insurance companies to limit recovery amounts to the policyholder's actual loss." Id. at 671 (citations omitted). Valued policy laws were born of legislatures' intentions "to discourage owners from over-insuring property while simultaneously thwarting insurers from collecting excessive premiums." Id. at 672.
[18] The "if any" language has been in the VPL since 1959. Ch. 59-205, § 606, at 718, Laws of Fla.
[19] See White v. State, 714 So.2d 440, 443 n. 5 (Fla.1998) (using a staff analysis as an indication of legislative intent).